[Crim. No. 15740. First Dist., Div. One. Dec. 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD CAREY FREEMAN, Defendant and Appellant.

COUNSEL

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins, Robert R. Granucci, and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RACANELLI, P. J.**—Defendant Donald Carey Freeman appeals from a judgment following a jury conviction of robbery (Pen. Code, § 211) fixed by the court as second degree, and first degree burglary (Pen. Code, § 459). Defendant was sentenced to the Youth Authority on the burglary conviction; sentence on the robbery conviction was stayed, the stay to become permanent upon completion of sentence on the burglary conviction.

 Defendant claims prejudicial error in the denial of his (1) constitutional right of self-representation, and (2) motion to suppress evidence. His first claim is meritorious and dispositive of the appeal. Accordingly, we must reverse the judgment of conviction and remand with directions.

*Right of Self-representation*

On October 15, 1975, six months in advance of the commencement of trial,[1] defendant requested that he be allowed to represent himself without a court-appointed attorney. During examination by the court it was revealed that defendant, who had never been through a trial before, had undergone 12 years of schooling, including a year of college vocational training. The court, after a general inquiry concerning defendant's familiarity with the rules of evidence, pointed out certain consequences and disadvantages that defendant would likely encounter during trial by undertaking his defense *pro se.* Thereafter, the court

---

[1]The record discloses that the original trial date had been set much earlier and was successively continued for a variety of reasons to the actual trial date of April 30, 1976. At the time of hearing of defendant's motion (which had been noticed during the preceding month), trial was set for November 24, 1975.

properly continued the hearing in order that the defendant might carefully reflect upon his expressed desire to proceed without counsel. On the following day, defendant having confirmed his request, the court denied the motion on the grounds of defendant's lack of knowledge of the rules of evidence and procedure and manifested lack of awareness of the obligations of responsible advocacy in terms of courtroom demeanor.[2]

It is now settled law that a defendant in a criminal trial possesses a constitutional right to represent himself without the assistance of counsel (*Faretta* v. *California* (1975) 422 U.S. 806, 836 [45 L.Ed.2d 562, 582, 95 S.Ct. 2525]; *People* v. *McDaniel* (1976) 16 Cal.3d 156, 164 [127 Cal.Rptr. 467, 545 P.2d 843][cert. den., 429 U.S. 847 (50 L.Ed.2d 119, 97 S.Ct. 131)], so long as he "knowingly and intelligently" waives the right to counsel and, being aware of the disadvantages of self-representation, makes his choice "with eyes open." (*Faretta* v. *California, supra,* at p. 835 [45 L.Ed.2d at p. 582].) In assessing the knowledgeable exercise of his right to personally defend himself, a showing of a defendant's technical legal knowledge is not required. (*Id.* at p. 836 [45 L.Ed.2d at p. 582].) Once "a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].) Herein, defendant's motion was asserted ". . . [well] within a reasonable time prior to the commencement of trial" (*id.* at p. 128), at which time the *Faretta* rule applied. (*People* v. *McDaniel, supra,* at p. 168.)

---

[2]The record reflects the following reasons given by the court in denying defendant's motion:

"THE COURT: In accordance with the criteria set out in People versus Brown decided by the Court of Appeal on September 11 of this year, the Court will deny the motion of the defendant to represent himself because the Court is satisfied that the defendant is not possessed of any significant degree of any knowledge of the rules of evidence or the rules of procedure in the courtroom.

"The court is also satisfied that the defendant doesn't comprehend the responsibility of an advocate in relation to the Court. In terms of the rules of procedure that apply to the advocacy and in terms of obligation to the Court to refrain from talking while the Court is responding, and things of that nature, the Court is of the opinion that Mr. Freeman is not possessed to any significant degree of the minimum qualifications that would be needed to protect his own rights and to understand how to present evidence in his own behalf."

N.B. (The decision in *People* v. *Brown,* relied upon by the court, was vacated by a hearing granted on November 6, 1975; upon transfer to Division Three of this court for reconsideration in light of *People* v. *McDaniel,* 16 Cal.3d 156 [127 Cal.Rptr. 467, 545 P.2d 843] (decided February 12, 1976) the judgment was affirmed in an unpublished opinion.)

The People candidly concede that under the mandate of *Faretta,* denial of the right of self-representation cannot be justified on either the grounds of lack of technical legal knowledge or anticipated disruptive behavior by an unrepresented defendant. ■ As explained in *Faretta,* "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. [Citation] ■ Of course, a State may—even over objection by the accused —appoint 'standby counsel' to aid the accused . . . , and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." (*Faretta* v. *California, supra,* 422 U.S. 806, 834-835, fn. 46 [45 L.Ed.2d 562, 581], citing *United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, 1124-1126 [154 App.D.C. 76].)

We conclude that the denial of defendant's motion was erroneous under *Faretta* principles.

### Standard of Reversible Error

■ We turn to the correlative question as to whether reversal is automatically compelled by reason of the erroneous denial of the *pro se* motion. We recognize that this precise question was left unanswered in *Faretta* (see dis. opn. of Blackmun, J., at p. 852 [45 L.Ed.2d at p. 591]) and expressly reserved by our Supreme Court in *Windham* (*supra,* 19 Cal.3d at p. 131, fn. 7).

The People, in urging that the result-oriented "harmless error" standard should apply (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]), argue that reversal based upon constitutional error is compelled only where the record manifests the related factors of (1) high probability of resulting prejudice, and (2) extreme difficulty in assessing the extent of such prejudice, relying on the rationale of *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001] (concerning application of the per se rule of error to involuntary confessions). The People stoutly maintain that inasmuch as the error here was committed in good faith, a more favorable verdict was not reasonably "possible" (*sic*), and the defendant enjoyed *pro se* representation in substance, such trilogy of circumstances warrant application of the less stringent standard and a finding of harmless error. We cannot agree.

In our analysis, we do not question the good faith of the learned trial judge in denying the motion out of an understandable concern for the interest of a youthful and inexperienced defendant. But the People fail to

cite, nor do we find, any authority for the relevancy of good faith in assessing the propriety of such denial.

The doctrine of harmless error normally operates "in cases where the challenged error concerns a right given the defendant in order to permit his defense to operate at maximum competence or to insulate him from the effects of suspect evidence. In such cases there is reason to consider whether claimed error is harmless because it plainly did not affect the result adversely to defendant, for then the reason for the right lapses." (*United States* v. *Dougherty, supra,* 473 F.2d 1113, 1127-1128; see also *Chapman* v. *United States* (5th Cir. 1977) 553 F.2d 886, 891.) In contrast, the *Faretta* rule manifestly does not derive from constitutional concepts directed towards enhancing reliability of the truth-determining or fact-finding process. The *Faretta* majority, in emphasizing the accused's absolute right to proceed *pro se,* based its decision on fundamental considerations of an individual's freedom of choice to personally conduct his own defense. (*Faretta* v. *California, supra,* 422 U.S. 806, 834 [45 L.Ed.2d 562, 581].) As our California Supreme Court observed in *People* v. *McDaniel, supra,* 16 Cal.3d 156, at page 165: "Notwithstanding the prejudice which an accused may suffer upon self-representation, the right to so penalize himself was deemed by the majority to be grounded on other considerations directed more to the assertion of personal liberties than to the assertion of an effective defense. The majority thus state: 'To force a lawyer on a defendant can only lead him to believe that the law contrives against him. . . . The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the life blood of the law." [Citation.]' (*Id.,* at p. 834 [45 L.Ed.2d at p. 581].)"

It thus appears that application of the result-oriented harmless-error doctrine (*Chapman* v. *California, supra,* 386 U.S. 18) would render the right of self-representation virtually unenforceable in most cases, thereby effectively nullifying the right itself. (See *People* v. *Ruiz* (1968) 263 Cal.App.2d 216, 226-227 [69 Cal.Rptr. 473].) As observed by the *Dougherty* court (in the context of review of denial of a statutory *pro se* right), ". . . if the conventional doctrine of harmless error is applied, it will in effect undercut the right of pro se representation, since rarely if ever can there be a showing of prejudice in terms of result from the

conduct of a trial by counsel. . . ." (*United States* v. *Dougherty, supra,* 473 F.2d 1113, opn. on petn. for rehg., at p. 1148; see also *Chapman* v. *United States,* supra, 553 F.2d 886, 891-892.) Such conclusion is fortified by the language of *Faretta* where it is stated: "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." (*Faretta* v. *California, supra,* 422 U.S. 806, 834 [45 L.Ed.2d 562, 581].)

■ Accordingly, the force of such reasoning inexorably leads to the conclusion that denial of a defendant's timely asserted *pro se* motion, in contravention of *Faretta* principles, constitutes reversible error per se.

■ Nor do we find, as suggested by the People, that the defendant by exercising his right to testify was afforded the substance of *pro se* representation. (Cf. *United States* v. *Dougherty, supra,* 473 F.2d 1113, 1129-1130.)[3] ■ It is well established that while defense counsel has the power to control the proceedings in behalf of a defendant, that power may not be exercised to deprive the defendant of certain fundamental rights, including the right to testify in his own defense. (*People* v. *Robles* (1970) 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]; see *Harris* v. *New York,* 401 U.S. 222, 225 [28 L.Ed.2d 1, 4, 91 S.Ct. 643].) ■ The mere exercise of such personal testimonial right, while represented by unwanted counsel, can hardly be equated with substantial enjoyment of his constitutionally guaranteed right of self-representation. It seems anomalous to argue that an erroneous denial of a defendant's constitutional right of self-representation is nevertheless cured by assertion of his totally independent constitutional privilege to testify in his own behalf. The effect of such reasoning would result in the imposition of an unjustified qualification on the exercise of personal choice to proceed *pro se* by a defendant who intends to testify and conceivably would dampen the free exercise of one constitutional (Fifth Amend.) guarantee solely by reason of improper denial of another constitutional (Sixth Amend.) right.

■ Finally, we address the People's proposal that this court fashion a new rule of criminal procedure to operate prospectively whereby claimed *Faretta* error would be reviewable on appeal only if the appealing party initially challenged the granting or denial of a *pro se*

---

[3] A similar argument was advanced in *Dougherty,* where several defendants were allowed to participate in jury selection, make opening statements and testify informally in narrative fashion. That court, in finding that such efforts failed to dissipate the erroneous denial of the *pro se* motions, concluded that such indulgence "undercuts the objective of preserving defendant's personal autonomy and responsibility in the courtroom." (*United States* v. *Dougherty, supra,* 473 F.2d at p. 1129.)

motion by pretrial extraordinary writ. By implementing such a rule, it is argued, the predictable dilemma facing trial judges in deciding difficult questions of waiver and competency which might infect the ensuing trial would be greatly ameliorated. But no compelling reason appears for the creation of such a novel rule. In addition to the delay and cost attendant upon such an engrafted procedure, it would appear that—absent special circumstances—generally established principles permitting appellate review of pretrial rulings either by extraordinary writ or direct appeal are equally appropriate for review of *pro se* motions. (Cf. *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], sanctioning either form of review for erroneous denial of motions to dismiss for delay in trial.)

### *Search of the Automobile Trunk*

In order to provide guidance upon retrial of the cause, we consider defendant's claim that the evidence obtained in the warrantless search of the automobile trunk is inadmissible as the product of an unlawful search and seizure based upon a coerced consent.

In the case of a warrantless search, the burden is on the People to establish justification under a recognized exception to the warrant rule. (*People* v. *Rios* (1976) 16 Cal.3d 351, 355-356 [128 Cal.Rptr. 5, 546 P.2d 293].) Consent constitutes such an exception. (*People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) Where the People rely upon consent, however, they have "the additional burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority." (*Id.*) These burdens may be satisfied by a preponderance of the evidence. (*Id.* at p. 106, fn. 4, disapproving any contrary holding in *People* v. *Reynolds* (1976) 55 Cal.App.3d 357, 367 [127 Cal.Rptr. 561].)

The scope of review on the issue of voluntariness of consent is limited. The issue is to be determined in the first instance by the trier of fact in light of all of the circumstances of the particular case. " 'The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence.' " (*People* v. *James, supra,* 19 Cal.3d 99, 107, quoting *People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

■ The evidence considered by the trial court on ruling on defendant's suppression motion reflects the following: acting upon reliable information concerning a reported burglary and armed robbery, the police officers detained and patsearched defendant[4] and his brother, Ronald, after they had parked their automobile outside their residence. A third occupant, Roy Jackson, was immediately arrested on the basis of a positive description furnished by the victim. The pat-down search of each of the Freeman brothers yielded some of the stolen cassette tapes; they were then placed under arrest. One of the officers (House) asked Ronald, the driver of the automobile, if he could look into the trunk. Ronald replied: "You can look in the trunk. There's nothing in there" or "Go ahead. There's nothing in it," handing the officer his car keys. Another officer (Thomas) gave testimony corroborating the circumstances of Ronald's permission and voluntary delivery of the keys. Upon opening the trunk with the keys supplied by Ronald, the officers discovered a box containing 52 of the stolen cassettes. Ronald denied giving such permission and surrendering his car keys.

In determining that the consent to search was validly given, the trial court specifically found the testimony of the officer to be credible and that of Ronald unworthy of belief. Such findings where supported by substantial evidence, as here, must be upheld on appeal. (*People* v. *Superior Court (Keithley), supra,* 13 Cal.3d 406, 410; *People* v. *Gale,* 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204].)

Defendant stresses that at the time of giving consent Ronald was under arrest and had been placed in a police car; under these circumstances, he contends, any consent must be deemed coerced and thus involuntary. ■ However, it is well established that while the defendant's custody at the time of giving consent to search is a significant circumstance, it is not conclusive in the determination of voluntariness. Instead, it is but one factor to be weighed in the balance together with all other circumstances bearing on such issue. (*People* v. *James, supra,* 19 Cal.3d 99, 109-110.) ■ Since the record contains substantial evidence to support the finding of voluntary consent, that finding is conclusive on appeal. (*Id.* at p. 118.) The evidence obtained as a result of the consensual search of the trunk was properly admitted during trial.

■ We reverse the judgment of conviction and remand the cause for further proceedings consistent with the views herein expressed; since

---

[4]Defendant does not contest the lawfulness of the detention and pat-down search.

the denial of defendant's *pro se* motion was based upon improper considerations, upon remand the trial court shall reconsider said motion solely to determine whether defendant's choice is freely and intelligently made.

Elkington, J., and Broussard, J.,* concurred.

A petition for a rehearing was denied January 25, 1978, and the petitions of both parties for a hearing by the Supreme Court were denied March 23, 1978.

---

*Assigned by the Chairperson of the Judicial Council.