[Crim. No. 29958. Second Dist., Div. Four. Feb. 2, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN L. SALAS, Defendant and Appellant.

### COUNSEL

Juan L. Salas, in pro. per., and James M. Fischer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Cynthia Sonns Waldman, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**WIENER, J.**\*—On retrial, after this court reversed a judgment convicting defendant of the robbery of Guadalupe Escobar (Pen. Code, § 211),[1] a jury again found defendant guilty of such offense, which was determined to be second degree robbery as a matter of law. The jury also found true the allegation of the second amended information that defendant, during the commission of the offense, intentionally inflicted great bodily injury on the victim (Pen. Code, § 213). Defendant was sentenced to state prison for the term prescribed by law, such sentence to run consecutively "with any other sentence the defendant may be obligated to serve as a result of any prior convictions." Defendant appeals from the judgment of conviction, urging four grounds for reversal.

I

Defendant contends that the trial court improperly denied him the constitutional right to represent himself. In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] the United States Supreme Court held that a defendant in a state criminal trial has a federal constitutional right to represent himself without counsel *if he voluntarily and intelligently elects to do so.* "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." (*Faretta* v. *California, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at p. 581].)

---

\*Assigned by the Chairperson of the Judicial Council.

[1]*People* v. *Salas* (1976) 58 Cal.App.3d 460 [129 Cal.Rptr. 871].

The record herein shows: When the case was set for retrial, defendant told the court (Judge Ruffner) that he wished to represent himself. Upon learning that defendant does not read, speak or understand English, the court pointed out to defendant that he would be at a serious disadvantage in representing himself. When defendant nevertheless expressed a desire to proceed in pro. per., the court appointed two psychiatrists (Dr. Harvey and Dr. Sheel) to examine defendant and report to the court whether he was able intelligently to waive his right to counsel. Following the psychiatric examinations, a hearing was held on defendant's petition to proceed in pro. per. At that hearing, the written reports of the psychiatrists were received in evidence. In his report, Dr. Harvey concluded that defendant was unable knowingly and intelligently to waive representation by counsel because of: (1) low intelligence; (2) impaired capacity for abstract thought; (3) lack of insight into his own psychological and intellectual limitations; (4) lack of comprehension of what competent counsel can and cannot do for him; and (5) significant language impediments. In his report, Dr. Sheel expressed the opinion that defendant had the mental capacity knowingly and intelligently to waive the right to counsel because he was not psychotic and was of average intelligence. However, Dr. Sheel testified that defendant was a "paranoid individual" and wished to defend himself because he was "very suspicious of the court process, very suspicious of the court appointing an attorney to be in charge of his case, and certainly his suspiciousness I don't think is justified . . . ." At the conclusion of the hearing, Judge Ruffner found that defendant was not able intelligently to waive his right to counsel. Accordingly, he denied defendant's petition to proceed in propria persona. Throughout the ensuing retrial ·(before Judge Pollack), defendant was represented by the public defender.

*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 573 [138 Cal.Rptr. 36], recommends that a trial court, in ruling on a criminal defendant's request to represent himself, make some inquiry into the defendant's intellectual capacity to make an intelligent decision regarding self-representation; such inquiry should include, where appropriate, a psychiatric examination of the defendant. This was the procedure employed by the trial court in the instant case. Defendant argues that the court improperly focused on his lack of technical legal knowledge, a factor which is not relevant to an assessment of the defendant's knowing exercise of the right to defend himself. (*Faretta* v. *California, supra,* 422 U.S. at p. 836 [45 L.Ed.2d at p. 582].) The contention is without merit. The record shows that the court denied defendant's petition to represent himself not because of his lack of legal knowledge, but because the court

determined that defendant did not have the mental capacity to make an intelligent decision to represent himself.[2]

Prior to the *Faretta* decision, the California Supreme Court stated: "The determination of the trial judge as to the defendant's competence to waive counsel involves an exercise of discretion by the trial judge which in the absence of an abuse of discretion will not be disturbed on appeal." (*People* v. *Robles* (1970) 2 Cal.3d 205, 218 [85 Cal.Rptr. 166, 466 P.2d 710].) We perceive nothing in *Faretta* which changes this rule. The record herein contains ample evidence supporting the trial court's conclusion that defendant was unable intelligently to waive his right to counsel. Therefore, the court did not abuse its discretion in denying defendant's petition to proceed in propria persona.

## II

 Defendant next contends the evidence does not support the finding that he inflicted great bodily injury upon the victim of the robbery within the meaning of Penal Code section 213, which increases the punishment for second degree robbery from imprisonment in the state prison for not less than one year to imprisonment for fifteen years to life upon a finding that great bodily injury was intentionally inflicted during the commission of the robbery. As used in section 213, the term "great bodily injury" means significant or substantial bodily injury or damage as distinguished from trivial or insignificant injury or moderate harm. (*People* v. *Miller* (1977) 18 Cal.3d 873, 883 [135 Cal.Rptr. 654, 558

---

[2]At the conclusion of the hearing, Judge Ruffner stated: "The court does feel that the defendant has serious intellectual problems. I have noticed myself in my dealings with the defendant that even when a simple question is put to him, he tends to go off on a tangent. [¶] And I notice what Dr. Harvey says about his mental activity being fragmented, and that is my conclusion also. I am impressed with Dr. Harvey's observations about the defendant's inability to handle even simple abstractions. [¶] I think the defendant has a mind that causes him to look for simplistic answers to things. I don't think the defendant has even a limited ability to understand the significance of waiving counsel, particularly for a person like himself who has a language problem. It is a huge reality to lawyers, but I don't think that the defendant understands five per cent of it. When we consider that a lawyer is a creature of words and his ability to function in a courtroom is absolutely dependent on his understanding everything that is said in a courtroom at all times, I can't help but being struck with what a radical decision it is that the defendant seeks to make. [¶] Now, I think the thing that Dr. Sheel puts his finger on of the defendant's paranoid personality, is one more thing that is getting in the way of the defendant making an intelligent decision about this matter. [¶] I think the defendant is being shoved in the direction of an unintelligent decision at least in part by his paranoia."

P.2d 552]; *People* v. *Richardson* (1972) 23 Cal.App.3d 403, 411 [100 Cal.Rptr. 251].)

The evidence herein shows: Defendant followed Guadalupe Escobar into the rest room of a cocktail lounge. Inside the rest room defendant, using his fist, hit Escobar in the face, knocking him to the floor. While Escobar was on the floor defendant again struck him in the face. Defendant then took $110 from the pockets of Escobar's shirt and trousers, forcibly removed the jacket Escobar was wearing, and took it. When Escobar left the rest room, his face was covered with blood. As a result of the blows inflicted by defendant, Escobar's nose was broken and one of his teeth was knocked out. He also sustained cuts on his nose, cheek and lip. Following the attack he was taken to a hospital, where three or four sutures were applied to each cut. At the time of trial, Escobar's broken nose had healed but, on touching the nose, he still was able to feel a separation of the bone. When he had a cold, his sense of smell was impaired because of the injury to his nose.

██ Whether the harm resulting to the victim of a robbery constitutes great bodily injury is a question of fact for the jury. (See *People* v. *Poulin* (1972) 27 Cal.App.3d 54, 61 [103 Cal.Rptr. 623].) If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding. (*People* v. *Wells* (1971) 14 Cal.App.3d 348, 359-360 [92 Cal.Rptr. 191].) In *People* v. *James* (1955) 133 Cal.App.2d 478 [284 P.2d 527], a prosecution for assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)), the victim had a possible nose fracture, a black eye and a few loose teeth, and was bleeding about the face. The appellate court sustained the trial court's finding that such evidence established not only that the defendant assaulted the victim with the intent to produce great bodily injury, but also that he in fact produced such injury. ██ In view of the similar injuries sustained by Escobar in the present case, the evidence was sufficient to support the jury's finding that Escobar suffered great bodily injury.

### III

██ Defendant further contends the trial court erred in failing to instruct, *sua sponte,* on assault by means of force likely to produce great

bodily injury (Pen. Code, § 245, subd. (a)), simple assault (Pen. Code, § 240), and battery (Pen. Code, § 242) which, according to defendant, are lesser offenses necessarily included within robbery.

■ A trial court, even when not requested to do so, must instruct the jury on necessarily included offenses. (*People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370].) There are two basic tests for determining whether an offense is a necessarily included lesser offense for the purpose of *sua sponte* instructions. First, where one offense cannot be committed without committing another offense, the latter is a necessarily included offense. Second, a lesser offense is necessarily included if it is within the offense specifically and factually charged in the accusatory pleading, as distinguished from the statutory definition of the crime. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Orr* (1974) 43 Cal.App.3d 666, 673 [117 Cal.Rptr. 738].) ■ Here, defendant was charged with robbery, which is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) Thus, while robbery is a combination of theft and assault (*People* v. *Sutton* (1973) 35 Cal.App.3d 264, 270 [110 Cal.Rptr. 635]), it does not include, under the first test, either assault by means of force likely to produce great bodily injury, or battery. Defendant contends that, under the second test, such offenses are necessarily included in the offense of robbery because the second amended information herein alleges that defendant, in robbing Escobar, intentionally inflicted great bodily injury upon him. The contention is without merit. Such an allegation does not charge a substantive offense; it merely warrants enhanced punishment for robbery. Accordingly, the allegation of infliction of great bodily injury did not require an instruction on necessarily included offenses. (See *People* v. *Orr, supra,* 43 Cal.App.3d at pp. 673-674.)

As previously indicated, robbery includes the lesser offense of simple assault. However, there is no obligation to instruct on a lesser included offense when there is no evidence that the offense committed was less than that charged. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Osuna* (1969) 70 Cal.2d 759, 767 [76 Cal.Rptr. 462, 452 P.2d 678]; *People* v. *Morrison* (1964) 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874].) In the present case, evidence presented by the prosecution showed the existence of all of the elements of robbery.

Defendant's only defense was that of alibi. Thus, the evidence was such that defendant was guilty of the greater offense of robbery or was not guilty of any offense. Under these circumstances, the failure to instruct on simple assault was not error. (See *People* v. *Carter* (1969) 275 Cal.App.2d 815, 823 [80 Cal.Rptr. 202]; *People* v. *Crawford* (1968) 259 Cal.App.2d 874, 878-879 [66 Cal.Rptr. 527].)

## IV

Before judgment was pronounced, the deputy district attorney informed the trial court that, prior to commencement of the retrial herein, defendant had been convicted of violation of Penal Code section 4500 (assault by a prisoner undergoing a life sentence), which is punishable by imprisonment in the state prison for life without the possibility of parole for nine years.[3] The court then sentenced defendant to state prison for the term prescribed by law (15 years to life, Pen. Code, § 213), and further ordered that such sentence "shall run consecutively with any other sentence the defendant may be obligated to serve as a result of any prior convictions." ■ Defendant contends the trial court erred in thus making the sentence for robbery run consecutively to the life sentence for defendant's previous conviction of violating Penal Code section 4500. We agree, for Penal Code section 669 requires that all sentences for other crimes run concurrently with an express life term.[4] (*In re Ward* (1966) 64 Cal.2d 672, 678 [51 Cal.Rptr. 272, 414 P.2d 400]; *People* v. *Womack* (1967) 252 Cal.App.2d 761, 767 [60 Cal.Rptr. 870].)

The judgment is modified to provide that the term of imprisonment for defendant's conviction of robbery shall run concurrently with any life sentence which defendant is presently required to serve, but consecutive-

---

[3]Penal Code section 4500 reads: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, or the person so assaulted is another inmate, the punishment shall be imprisonment in the state prison for life without the possibility of parole for nine years. . . ."

[4]Penal Code section 669 provides in pertinent part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by a different judge . . . if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term. . . ."

ly to any other sentence he may be required to serve. As thus modified, the judgment is affirmed.

Files, P. J., and Jefferson (Bernard), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1978.