[No. 4035-6-III.   Division Three.   May 4, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS CLAVIS CHAVIS, *Appellant.*

*McLendon & Kaiser, John O. McLendon,* and *Bruce A. Kaiser,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia*

*Thompson, Deputy,* for respondent.

McINTURFF, C.J.—Thomas Clavis Chavis appeals his conviction for third degree statutory rape under RCW 9A.44.090.[1] The pivotal issue concerns the waiver of the defendant's constitutional right to be represented by a lawyer.

During the early morning hours of October 13, 1979, Mr. Chavis, the victim and Thomas Davis were located at Mr. Davis' house. Mr. Davis was married at the time but was having a relationship with the victim. The victim testified she had performed sexual intercourse with Mr. Davis,[2] who then left the residence to purchase cigarettes. It was during this absence the victim alleges to have been raped by Mr. Chavis, who denies the incident.

At his arraignment on December 27, 1979, the trial judge read part of the information charging Mr. Chavis with the offense and stated:

THE COURT: Before I take your plea, you don't have to enter your plea at this time and you may wait until you've had time to talk to an attorney, and you are entitled to a lawyer throughout the proceedings. If you can't afford one, I will appoint one. You want me to appoint one before entering your plea?

---

[1]RCW 9A.44.090 states:

(1) A person over eighteen years of age is guilty of statutory rape in the third degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is fourteen years of age or older but less than sixteen years old.

Although we note the court's findings do not specifically set forth the element of the absence of marriage between the complaining witness and the defendant, the following dialogue occurred at trial:

THE COURT: Did you know Mr. Chavis before?

A. I had met him that night.

THE COURT: That night, not before that?

A. No.

Subsequent correspondence between this court, counsel and Mr. Chavis establishes no marriage existed.

[2]Mr. Davis was also charged with third degree statutory rape. However, the charge was dismissed following his plea of guilty to a lesser offense.

DEFENDANT: No.

. . .

THE COURT: And you're not asking me to appoint one?
DEFENDANT: No.
THE COURT: You intend to hire one yourself?
DEFENDANT: Yes, if I can get out and one meets my budget.

. . .

THE COURT: . . . [I]nform the prosecuting attorney of your attorney's name when you do retain one, and if you are unable to retain one and you want one, you should come back in and ask that one be appointed.
DEFENDANT: Okay.

Prior to trial on February 15, 1980, the following exchange took place:

THE COURT: . . . I also have an Order waiving your right to counsel. Do you understand, Mr. Chavis, that you do have a right to an attorney, is that correct?
MR. CHAVIS: Yes.
THE COURT: These rights, I take it, have been explained to you in some previous hearing have they not?
MR. CHAVIS: Yes.
THE COURT: Mr. Chavis, what is your experience, have you ever been a law student or anything like that?
MR. CHAVIS: No, sir, I haven't.
THE COURT: Have you ever conducted a trial on your own?
MR. CHAVIS: Yes.
THE COURT: You do understand you have a right to act as your attorney, but you are still bound to follow the same rules as the attorneys follow. You understand that?
MR. CHAVIS: Yes, sir.

Mr. Chavis subsequently appeared pro se, cross–examined witnesses, called witnesses in his behalf and testified in narrative form concerning his theory of the case. After considering the evidence presented, the trial judge found Mr. Chavis guilty as charged.

The central issue on appeal is whether there was a knowing and voluntary waiver of a right to counsel.[3]

---

[3]Mr. Chavis is represented by counsel on this appeal. The trial judge is highly respected by this court, and in fairness to his action, we note the existence of

■ Generally, a defendant in a criminal case who is sui juris and mentally competent has the right to conduct his defense in person, without assistance of counsel.[4] *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 569, 95 S. Ct. 2525 (1975). Whether a valid waiver of counsel exists is within the discretion of the trial judge. *State v. Kolocotronis,* 73 Wn.2d 92, 102, 436 P.2d 774 (1968); *State v. Fritz,* 21 Wn. App. 354, 361, 585 P.2d 173, 98 A.L.R.3d 1 (1978). In *Fritz,* the court set forth basic principles for asserting and implementing the right of self–representation. Among those principles is the necessity of a knowing and intelligent waiver. *Fritz, supra* at 359. As stated in the oft–quoted passage from *Faretta, supra* at 422 U.S. 835:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self–representation, *he should be made aware of the dangers and disadvantages of self–representation,* so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

(Citation omitted. Italics ours.)

In *Faretta,* "[t]he record *affirmatively* [indicated] that Faretta was literate, competent, and understanding," *Faretta, supra* at 422 U.S. 835. Questioning by the judge revealed Mr. Faretta had once represented himself in a criminal prosecution and that he had a high school

---

nebulous criteria for determining whether the defendant has intelligently and knowingly waived his right to counsel. This opinion attempts to guide the trial judges with more specificity.

[4]Const. art. 1, § 22 states:

In criminal prosecutions the accused shall have the right to appear and defend *in person,* or by counsel, . . .

(Italics ours.) Other state constitutions have similar provisions. *See* 77 A.L.R.2d 1233, 1235 (1961).

education.[5] Prior to trial, "the judge *sua sponte* held a hearing to inquire into [Mr.] Faretta's ability to conduct his own defense, and questioned him specifically about both the hearsay rule and the state law governing the challenge of potential jurors." *Faretta, supra* at 422 U.S. 808. After consideration of Mr. Faretta's answers and observation of his demeanor, the judge ruled Mr. Faretta had not made an intelligent and knowing waiver of his right to the assistance of counsel[6] and ruled Mr. Faretta had no constitutional right to conduct his own defense. On certiorari, the United States Supreme Court vacated the judgment and remanded the case, holding that a defendant has a constitutional right to proceed pro se when he voluntarily and intelligently elects to do so.

Although questions were asked of Mr. Chavis regarding his understanding of the right to counsel and regarding prior experience, his passive responses were not adequate for the trial judge to adequately weigh the character of his waiver:

THE COURT: Mr. Chavis, what is your experience, have you ever been a law student or anything like that?

MR. CHAVIS: *No, sir, I haven't.*

THE COURT: Have you ever conducted a trial on your own?

MR. CHAVIS: *Yes.*

THE COURT: You do understand you have a right to act as your own attorney, but you are still bound to follow the same rules as the attorneys follow. You understand

---

[5]The judge informed Mr. Faretta:

"'You are going to follow the procedure. You are going to have to ask the questions right. If there is an objection to the form of the question and it is properly taken, it is going to be sustained. We are going to treat you like a gentleman. We are going to respect you. We are going to give you every chance, but you are going to play with the same ground rules that anybody plays. And you don't know those ground rules. You wouldn't know those ground rules any more than any other lawyer will know those ground rules until he gets out and tries a lot of cases. And you haven't done it.'" *Faretta, supra* at 422 U.S. 808 n.2.

[6]Mr. Faretta's argument for self–representation turned on his belief that the public defender's office was "'very loaded down with . . . a heavy case load.'" *Faretta, supra* at 422 U.S. 807.

that?

MR. CHAVIS: *Yes, sir.*

(Italics ours.) These single answer responses do not satisfy us that Mr. Chavis fully understood the "dangers and disadvantages of self–representation". *Faretta, supra* at 422 U.S. 835.

An accused should not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the accused's comprehension of the offer and capacity to make the choice intelligently and understandably has been made. In *Von Moltke v. Gillies,* 332 U.S. 708, 92 L. Ed. 309, 68 S. Ct. 316 (1948), the plurality opinion stated at pages 723–24:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—*whose life or liberty is at stake*—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, *a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.* The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid *such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof,* and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made *only from a penetrating and comprehensive examination of all the circumstances* under which such a plea is tendered.

This case graphically illustrates that *a mere routine inquiry*—the asking of several standard questions followed by the signing of a standard written waiver of

counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel.

(Footnotes omitted. Italics ours.) *See also State v. Verna,* 9 Or. App. 620, 498 P.2d 793, 797 (1972).

Since the question ultimately is the *subjective* understanding of the accused rather than the quality or content of the explanation provided, the court should question the accused in a manner designed to reveal *understanding,* rather than framing questions that call for a simple "yes" or "no" response. *See United States ex rel. Miner v. Erickson,* 428 F.2d 623, 636 (8th Cir. 1970). The judge must make a penetrating and comprehensive examination in order to properly assess that the waiver was made knowingly and intelligently. *See United States ex rel. Martinez v. Thomas,* 526 F.2d 750, 755 (2d Cir. 1975). Although a lack of legal technical knowledge generally will not serve as a basis for denying assertion of the right to self–representation, *see People v. Freeman,* 76 Cal. App. 3d 302, 142 Cal. Rptr. 806, 809 (1977); *Faretta, supra* at 422 U.S. 836, waivers of counsel have been held invalid where they were not intelligently or understandingly made due to factors indicating inability to comprehend the matter.[7] *United States*

---

[7]Recent cases which determined the defendant did not knowingly and intelligently waive the right to assistance of counsel include: *Badger v. Cardwell,* 587 F.2d 968 (9th Cir. 1978) (defendant merely told pro se representation would not be in his best interest); *United States ex rel. Martinez v. Thomas, supra* (educational and social background); *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977) (defendant under extreme stress); *People v. Barajas,* 81 Cal. App. 3d 999, 147 Cal. Rptr. 195 (1978) (defendant merely told he would be treated as if he had counsel); *People v. Salas,* 77 Cal. App. 3d 600, 143 Cal. Rptr. 755 (1978) (defendant asserted assigned attorney was of no help and not needed); *People v. Lopez,* 71 Cal. App. 3d 568, 138 Cal. Rptr. 36 (1977) (defendant not advised on record of dangers and disadvantages of self–representation); *State v. Bauer,* 310 Minn. 103, 245 N.W.2d 848 (1976) (defendant had paranoic distrust of everyone connected with judicial system); *State v. Tilley,* 548 S.W.2d 199 (Mo. Ct. App. 1977) (court made no examination into defendant's awareness of elements of offense charged, possible defenses and mitigating circumstances); *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976) (no penetrating and comprehensive examination of all circumstances was conducted). *See also* cases cited in 98 A.L.R.3d 13, § 11 (1980); 77 A.L.R.2d 1233, § 3 (1961).

*ex rel. Martinez v. Thomas, supra* at 755; *Cooper v. Griffin,* 455 F.2d 1142 (5th Cir. 1972); *United States ex rel. Simon v. Maroney,* 228 F. Supp. 800, 801 (W.D. Pa. 1964).

The court in *Faretta* said a defendant should be made aware of the dangers and disadvantages of self–representation, so that the *record will establish* that "'he knows what he is doing and his choice is made with eyes open.'" *Faretta, supra* at 422 U.S. 835. Although each case is different, trial courts should attempt to determine the subjective reasons for the defendant's refusal. A defendant may believe he will be denied any opportunity to speak for himself; that no appointed lawyer would zealously represent him at a state fee; that a distrust of the judicial system necessitates a pro se appearance for a fair trial; the defendant may even feel that appearance pro se may afford a later basis for reversal on appeal;[8] that based upon television portrayals a criminal trial is a simple matter; that the jury would be sympathetic to a lay person who acts as David against the Goliath of the State; because of a blind faith in his innocence and the infallibility of the judicial system, or simply a desire to save money.[9] In attempting to determine the reasons for a defendant's refusal of the assistance of counsel the trial judge would be in a better position to discuss the defendant's fears and apprehensions while attempting to mitigate them.[10]

---

[8]Mr. Chavis on appeal also contends his pro se defense was inadequate and a new trial should be had as a matter of law.

[9]*See* Note, *The Right of an Accused To Proceed Without Counsel,* 49 Minn. L. Rev. 1133, 1134 (1965); *see also* Brick, *Self–Representation in Criminal Trials,* 59 Colo. L. Rev. 1479, 1498 (1971).

[10]Rule 711 of the Unif. R. Crim. P., 10 U.L.A. 307 (1974) states:
  A defendant is not deemed to have waived his right to legal counsel at any stage of the proceedings unless the court at that stage accepts a waiver of counsel. A waiver of counsel may not be accepted unless it is made expressly and voluntarily and the court is satisfied that the defendant fully understands:
    (1) *The nature of the charge against him . . .*
    (2) *That a defense lawyer can render important assistance* in determining the existence of possible defenses to the charge and in pre-

Courts must not disregard the long–term interest of the accused in having his or her guilt or innocence *fairly* determined. The accused should be allowed to weigh the advantages of counsel. The trial judge must maintain a position as fulcrum in the Sixth Amendment balance between a defendant who unequivocally asserts a desire to act on his or her own behalf and society's interest in ensuring the constitutional right to counsel is not denied under the guise of a valid waiver. If the defendant is competent in all respects he should be allowed to proceed pro se at the risk of conducting "his own defense ultimately to his own detriment". *Faretta, supra* at 422 U.S. 834. Conversely, where the court, after thorough examination, determines the defendant is not competent to proceed under a waiver, the court has an affirmative duty to appoint counsel.

If the court has doubt relating to the ability of the

---

paring for and representing a defendant at trial or, in the event of a plea, in consulting with the prosecuting attorney as to *possible reduced charges or lesser penalties*, and in presenting to the court matters which might lead to a lesser penalty;

    (3) If the defendant is in custody, that a defense lawyer can render important assistance in presenting to the court matters respecting *terms of release;* and

    (4) The *nature of the particular stage* of the proceedings and his rights at that stage.

*The court may refuse to accept a waiver of counsel until the defendant has first consulted with a lawyer.* Notwithstanding acceptance of a waiver *the court may appoint standby counsel* to assist when called upon by the defendant, to call the court's attention to matters favorable to the defendant upon which the court should rule upon its own motion, and, should it become necessary for a fair trial, to conduct the defense.

(Italics ours.)

Additionally, 1 American Bar Ass'n, *Standards for Criminal Justice*, Std. 5–7.3 (2d ed. 1980) states:

If an accused has not seen a lawyer and indicates an intention to waive the assistance of counsel, a lawyer should be provided for consultation purposes. No waiver should be accepted unless the accused has at least once conferred with a lawyer.

*See also* Mazor, *The Right To Be Provided Counsel,* 9 Utah L. Rev. 50, 76 (1964); Note, *The Right of an Accused To Proceed Without Counsel,* 45 Minn. L. Rev. 1133, 1151 (1965). These commentators note that providing counsel before a waiver is accepted helps counter the argument that waiver by a lay person must be the result of insufficient information.

defendant to make a knowing and intelligent waiver of counsel, that doubt should be resolved by appointing counsel to represent the defendant, whether the appointment be in a full, ordinary attorney–client capacity, or on a standby or consulting basis.[11]

It must be borne in mind that in the final analysis the defendant himself is the person who stands to suffer the most from an improvident choice to reject the assistance of counsel. The free choice of a competent individual is entitled to great deference in our society; however, that individual must not be allowed to proceed in an ignorance which may cause untold harm to himself and his family, and also to the integrity of the judicial system.[12]

The judgment of the Superior Court is reversed; this matter is remanded (1) for a determination of whether Mr. Chavis should be allowed to proceed pro se once he has been appropriately informed, and (2) for a new trial.

GREEN, J., concurs.

ROE, J. (concurring in part in the result and dissenting in part)—Defendant Chavis was convicted of third degree statutory rape, RCW 9A.44.090, the elements of which require the defendant to be a person over 18 years of age who engaged in sexual intercourse with another person, *not married to the perpetrator,* who is 14 years of age or older but less than 16. Mr. Chavis represented himself at the bench trial, having waived his right of a jury trial and refused the services of an attorney after questioning by two judges.

In my view it is inappropriate to decide if there was any

---

[11]See footnote 10.

[12]Recently the United States Supreme Court in *Holloway v. Arkansas,* 435 U.S. 475, 489, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978) observed: "[T]his Court has concluded that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman* v. *California,* [386 U.S. 18, 23, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967)]."

error in accepting the waiver of counsel because the case should be reversed and dismissed in the interests of justice since an element of the crime, that is that the defendant was not married to the victim, was neither proved at the trial nor was there such a finding of fact made by the trial court. The deputy prosecutor never asked either the complaining witness or the defendant if they were married to each other. The only testimony touching upon this was a few questions by the judge regarding how long they had known each other. The answer given would not preclude a hasty marriage in a nearby state which, as is well known, sometimes happens. Apparently the prosecutor attached no significance to this element of the crime since it was never included in the findings of fact prepared by her and presented to the judge for signature. Although this was not urged on appeal, nevertheless, it is the duty of this court in its solicitude for justice and to avoid injustice not to affirm a conviction when one of the elements is neither proved nor found.

A comment should also be made as to the following: Since statements of the defendant made to a policewoman were introduced at trial, CrR 3.5 provides for a hearing before the statement of the accused is to be offered. In the verbatim report it appears this hearing was delayed to the date of trial, which is an acceptable procedure, but the record is silent that the court complied with CrR 3.5 which refers to the duty of the court (b) to inform the defendant of certain rights, and (c) to make a record as to the undisputed facts, the disputed facts and the conclusions. A reading of the verbatim report would indicate that the statement of the accused came in through the testimony of the policewoman after she stated the *Miranda* warnings were given and waived. If the court did comply with CrR 3.5, it should have been made a part of the record, particularly in this case where the defendant represented himself so we could be assured the rules were followed.