[Nos. 4283-9-III; 4602-8-III; 4673-7-III. Division Three. December 23, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS A. DOUGHERTY, *Appellant*.

*In the Matter of the Personal Restraint of*
DOUGLAS A. DOUGHERTY, *Petitioner*.

*John P. Nollette,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Al Gauper, Deputy,* for respondent.

McInturff, C.J.—By appeal and personal restraint petition, Douglas Dougherty challenges his convictions of first degree robbery and second degree burglary. Pursuant to RAP 16.11(c), the personal restraint petition was consolidated with the appeals.

At his arraignment, Mr. Dougherty asked the court to discharge his court appointed attorney. He alleged that his

public defender breached the attorney–client relationship by passing on confidential information to the prosecutor concerning his former wife's reluctance to testify. The motion was denied.

On October 16, 1980, Mr. Dougherty again asked the court to allow him to proceed as his own counsel. The following exchange occurred:

> THE COURT: All right, you tell me why you wish to go to trial on your own without an attorney, how you feel you can represent yourself.
>
> A. [Defendant] I am not totally unfamiliar with the law.

On October 20, 1980, the date set for trial, the public defender was granted, over Mr. Dougherty's objection, a 7–day continuance. Mr. Dougherty again requested to appear pro se. This time, the court granted his motion and the public defender was ordered to continue as standby counsel to serve in an advisory capacity. Mr. Dougherty represented himself at separate jury trials and was convicted of both charges.

█ Mr. Dougherty contends the trial court failed to ascertain whether the waiver of his right to counsel was knowingly and intelligently made. Generally, a criminal defendant who is mentally competent has the right to conduct his defense in person, without assistance of counsel. *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 569, 95 S. Ct. 2525 (1975); *Fritz v. Spalding,* 682 F.2d 782, 784 (9th Cir. 1982); *State v. Chavis,* 31 Wn. App. 784, 787, 644 P.2d 1202 (1982); *State v. Jessup,* 31 Wn. App. 304, 309, 641 P.2d 1185 (1982). The exercise of this right must be premised upon a knowing and intelligent waiver of the right to counsel. *State v. Kolocotronis,* 73 Wn.2d 92, 99, 436 P.2d 774 (1968). As stated in *State v. Chavis, supra* at 789:

> An accused should not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the accused's comprehension of the offer and capacity to

make the choice intelligently and understandably has been made.

Prior to accepting a waiver of counsel, the court must inform the defendant of the dangers and disadvantages of self–representation so that the record will establish that "'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835. The defendant must also be subjected to a penetrating and comprehensive examination by the court to determine the subjective reasons behind the refusal to accept counsel. *Chavis,* at 790.

Mr. Dougherty was not informed of the dangers of self–representation. Also, the trial court's inquiry into Mr. Dougherty's competency to represent himself and the reasons behind his request were limited to Mr. Dougherty's statement that he was not unfamiliar with the law. This inquiry was not adequate to determine whether Mr. Dougherty's waiver was knowingly and intelligently made. We conclude Mr. Dougherty did not validly waive his right to counsel.

Mr. Dougherty further contends he was denied meaningful access to the courts by the State's failure to provide him with sufficient legal materials to prepare his defense. Shortly after his incarceration, Mr. Dougherty sought to use the jail's law library and was advised the library was open approximately 2 hours a week. Mr. Dougherty was not allowed access to the library until October 20, 1980. Then to his dismay, he discovered the library consisted of:

1. 1976 edition of the Revised Code of Washington
2. American Jurisprudence, Guardian and Ward
3. Highways
4. Federal Taxation
5. Cases on business law
6. Cases on contracts
7. Cases and materials on torts
8. Cases and material on property

In early September 1980, Mr. Dougherty made arrangements with his mother in Texas to have the following books mailed to him:

1. Tessimer: Criminal Trial Strategy
2. Sokol: Puzzle of Equality
3. Sokol: Federal Habeas Corpus
4. Dawson: Sentencing
5. Sokol: Language and Litigation
6. Popper: Post–Conviction Remedies
7. Herman & Haft: Prisoners Rights Source Book
8. George: Constitutional Limitations on Evidence
9. Ershman: Manual of Reversible Errors
10. Black's Law Dictionary

Upon their arrival, jail personnel returned them to their sender without notifying Mr. Dougherty of either their arrival or the reasons for their return.

 A prisoner has a right of access to the courts under the due process clause. *Ex parte Hull,* 312 U.S. 546, 549, 85 L. Ed. 1034, 61 S. Ct. 640 (1941); *Storseth v. Spellman,* 654 F.2d 1349, 1352 (9th Cir. 1981). In a short per curiam opinion, the United States Supreme Court in *Younger v. Gilmore,* 404 U.S. 15, 30 L. Ed. 2d 142, 92 S. Ct. 250 (1971) affirmed a lower court ruling that such access must be reasonable. This holding was enlarged in *Bounds v. Smith,* 430 U.S. 817, 822, 52 L. Ed. 2d 72, 97 S. Ct. 1491, 1492–93 (1977), where the issue was whether North Carolina, by failing to provide either legal assistance or adequate legal resources for prison inmates to seek post–conviction relief, had denied prisoners their constitutional right of access to the courts. The majority held:

> [T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

(Footnote omitted.) *Bounds,* 430 U.S. at 828. The Court further declared the goal of meaningful access could be achieved by adequate law libraries or by alternative means such as paralegal assistants, paraprofessionals and law students, volunteer attorneys, full–time staff attorneys, or public defender or legal services offices. *Bounds,* 430 U.S. at

829.

The State of Washington provides public defenders for every indigent person "required either under the Constitution of the United States or under the Constitution and laws of the state of Washington . . ." RCW 36.26.070. In the majority of cases, the appointment of a public defender satisfies *Bounds*.

Where the defendant has knowingly and intelligently exercised his right of self-representation, the appointment of standby counsel meets the meaningful access requirement of *Bounds*.

The appointment of standby counsel, even over the defendant's objections, has been judicially authorized. *Faretta,* 422 U.S. at 833; *Chavis,* at 793; *State v. Fritz,* 21 Wn. App. 354, 363, 585 P.2d 173, 98 A.L.R.3d 1 (1978).

The function of standby counsel is to aid the accused if and when help is requested, and to be available to represent the accused in the event termination of the defendant's self-representation is necessary. *Faretta,* 422 U.S. at 833. Standby counsel will also assist the defendant in acquiring legal materials necessary to prepare for trial.

Here, Mr. Dougherty argues the appointment of standby counsel did not provide him with meaningful access because he distrusted his attorney. This distrust stemmed from his perception of his attorney's role as a pipeline of confidential information to the prosecutor's office. He also contends the County has a duty to maintain an adequate law library for use by pro se defendants.

The problem faced by a defendant who distrusts his attorney is solved by the trial court's inquiry into the defendant's subjective reasons for his distrust. When that hearing occurs, reasons such as those held by Mr. Dougherty will be evaluated by the court. A penetrating and comprehensive examination by the court of the defendant's allegation will serve as the basis of whether different counsel needs to be appointed for direct representation at trial, or for standby purposes. This decision lies within the sound discretion of the trial court. *State v. Shelton,* 71 Wn.2d

838, 840, 431 P.2d 201 (1967); *State v. Lytle,* 71 Wn.2d 83, 426 P.2d 502 (1967).

The solution to Mr. Dougherty's distrust of his attorney, if substantiated, is the appointment of different counsel, not the installation of law libraries in the county jails.

Because the record does not establish that Mr. Dougherty knowingly and intelligently waived his right to counsel, the judgment of the Superior Court is reversed. The matter is remanded (1) for a determination of whether Mr. Dougherty should be allowed to proceed pro se, and (2) for a new trial.

GREEN and MUNSON, JJ., concur.

Reconsideration denied April 18, 1983.

Review denied by Supreme Court June 23, 1983.