[No. B111267. Second Dist., Div. Five. June 11, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
BASIL ROY SINCLAIR, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portions.

**COUNSEL**

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Basil Roy Sinclair, appeals after he was convicted of second degree murder and was found to have used a firearm. (Pen. Code,[1] §§ 187, 12022.5.) In the published portion of the opinion, we conclude defendant, who testified before the jury at trial he never fired the fatal shot, presented no substantial evidence he committed the lesser and necessarily included crime of voluntary manslaughter (§ 192, subd. (a)) and, hence, there is no merit to his contention that he was entitled to instructions on heat of passion or imperfect self-defense. Further, in our unpublished discussion, we agree with the Attorney General that defendant must be sentenced to an additional four years for firearm use.

■ Defendant argues that he was entitled to voluntary manslaughter instructions on heat of passion (*People* v. *Dennis* (1998) 17 Cal.4th 468, 510 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; *People* v. *Williams* (1997) 16 Cal.4th 153, 227 [66 Cal.Rptr.2d 123, 940 P.2d 710]) and imperfect self-defense theories. (*People* v. *Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1]; *In re Christian S.* (1994) 7 Cal.4th 768, 771 [30 Cal.Rptr.2d 33, 872 P.2d 574].) These grounds for reducing murder to voluntary manslaughter focus on the state of mind of the accused. ■ In *People* v. *Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913] disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1], a decision involving the sua sponte duty to instruct, Chief Justice Donald Wright explained the need for evidence that the defendant's reason be obscured by passion as follows: "Because the existence of malice is presumed when the circumstances of a killing suggest an intent to kill or that ' "the killing proximately resulted from an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" ' (*People* v. *Phillips* [(1966)] 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353]), provocation *and* heat of passion must be affirmatively demonstrated. (*People* v. *Williams* (1969) 71 Cal.2d 614, 623 . . . ; *People* v. *Morse* (1969) 70 Cal.2d 711, 734-735 . . . .) It is not enough that provocation alone be demonstrated. There must also be evidence from which it can be inferred that the defendant's reason was in fact obscured by passion at the time of the act. (*People* v. *Morse, supra*, 70 Cal.2d 711, 734; *People* v. *Logan* (1917) 175 Cal. 45, 49 . . . .)" (Original italics.) ■ Chief Justice Rose Bird described the state of mind that must exist for voluntary manslaughter instructions to be given: " ' "The jury is . . . to be admonished and advised by the court that this heat of passion must be such a passion as

---

[1] All future statutory references are to the Penal Code.

would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and that, consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man . . . . For the fundamental of the inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear and never, of course, the passion for revenge—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." ' [¶] . . . [¶] The subjective element requires that the actor be under the actual influence of a strong passion at the time of the homicide." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 326-327 [185 Cal.Rptr. 436, 650 P.2d 311], disapproved on another point in *People* v. *Barton* (1995) 12 Cal.4th 186, 200-201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) In connection with the imperfect self-defense theory, the accused must possess "*actual* fear of an *imminent* harm." (*In re Christian S.*, *supra*, 7 Cal.4th at p. 783, original italics.) Later, the California Supreme Court described the precise fear that must be present to support an imperfect self-defense theory as follows: " 'The defendant's fear must be of *imminent* danger to life or great bodily injury.' ([Citation], italics in original.)" (*People* v. *Humphrey*, *supra*, 13 Cal.4th at p. 1082.) The California Supreme Court has described the defense of imperfect self-defense as "narrow." (*In re Christian S.*, *supra*, 7 Cal.4th at p. 783.) Both theories of partial exculpation, heat of passion and imperfect self-defense, require that the defendant actually both possess and act upon the required state of mind. ■ In the present case, defendant testified that he did not shoot the decedent. In fact, defendant even denied under oath he was armed. Accordingly, putting aside circumstantial evidence of his mental state as he shot the decedent, a subject which will be discussed shortly, based upon his own testimony, no voluntary manslaughter instructions had to be given on request. (*People* v. *Prettyman* (1996) 14 Cal.4th 248, 274 [58 Cal.Rptr.2d 827, 926 P.2d 1013]; *People* v. *Barton*, *supra*, 12 Cal.4th at p. 196, fn. 5.)

The closer and much more difficult question is whether based on other circumstantial evidence he was entitled to instructions on voluntary manslaughter, even though he denied under oath he shot the decedent or was even armed. ■ The sua sponte duty to instruct, and a fortiori, the responsibility to provide instructions on request, in connection with a lesser offense such as voluntary manslaughter exists when there is substantial evidence to support the defendant's culpability of the necessarily included crime. (*People* v. *Marshall* (1996) 13 Cal.4th 799, 846 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People* v. *Barton*, *supra*, 12 Cal.4th at p. 201; *People* v.

*Wickersham, supra,* 32 Cal.3d at p. 325.) That duty exists even though the evidence supporting the lesser offense is inconsistent with the accused's defense. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1345 [65 Cal.Rptr.2d 145, 939 P.2d 259]; *People v. Barton, supra,* 12 Cal.4th at pp. 198-199, fn. 7.) We review this issue as one of law. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Berryman* (1993) 6 Cal.4th 1048, 1089 [25 Cal.Rptr.2d 867. 864 P.2d 40].)

 The following are the facts defendant argues were sufficient to support voluntary manslaughter instructions on heat of passion and imperfect self-defense theories. Defendant walked into a bar. He testified he was hit in the face with a bottle by another patron. Defendant was bleeding and frightened. Defendant testified. "I asked him why did he hit me.". The assailant responded: "What you want to do about it? What are you going to do about it?" Then, according to defendant, the following transpired: "I asked him who is he, and then I asked him why he hit me again, and he said, 'You fucking Jamaican, you think you are tough.' " There were three people standing in front of defendant. There were also three people standing behind defendant. Thereupon, defendant went to a restroom in order to clean himself up because he was bleeding. Inside the restroom, defendant was approached by an unidentified man. The man was one of the three people who had been standing behind defendant outside of the restroom in the bar. The man stood behind defendant. The man displayed a gun in his waistband. While still bleeding, defendant attempted to leave the restroom. The man said, "When I finish with you, grass going to grow on your head." After leaving the restroom, two of the individuals he had seen earlier attempted to search defendant. The two men left and went back to the group who had earlier surrounded defendant. The members of the group whispered amongst themselves. Defendant then walked towards the exit of the bar and one of the men said, "I see you getting ready to leave." Defendant said, "What you want with me[?]." Defendant also said, "Who are you?" One of the other men said, "Looks like you getting ready to leave me and my home boys going to have to come finish it up outside." The man raised his hand as if to hit defendant. Thereupon, defendant, who was unarmed, heard a shot and ran with a crowd for a door. Defendant denied being armed or shooting the decedent. Moreover, defendant did not even know who was eventually shot in the face.

There was overwhelming evidence defendant fired the fatal shot, including photographs and a videotape, which we have reviewed. Defendant fled to Jamaica and later to Canada where he was arrested years later.

Defendant relies on the following language in *People v. Barton, supra,* 12 Cal.4th at page 196, which describes the theoretical underpinning of the duty to instruct on lesser included offenses: " 'Our courts are not gambling halls

but forums for the discovery of truth.' (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 . . . .) Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an 'all or nothing' choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence." (Fn. omitted.) Defendant argues this language required the trial court to instruct on the lesser included offense of voluntary manslaughter, which presupposed he held a gun in his hand and fired the fatal shot. However, we conclude *Barton*, a decision involving the reiteration of established Supreme Court decisional authority, did not require voluntary manslaughter instructions based on defendant's own testimony considered separately from and in conjunction with the prosecution evidence.

We are persuaded that former Presiding Justice Otto M. Kaus set forth the law applicable to this case in *People* v. *Medina* (1978) 78 Cal.App.3d 1000, 1005-1006 [144 Cal.Rptr. 581], a decision materially different from and not discussed in *Barton*. In *Medina*, the defendant testified he did not shoot the decedent. The victim was shot while outside in a residential neighborhood. Defendant testified he was intoxicated and in his mother's home at the time of the shooting. (*People* v. *Medina, supra*, 78 Cal.App.3d at pp. 1002-1004.) Justice Kaus held the defendant was not entitled to voluntary manslaughter instructions based on diminished capacity; the reason—the defendant testified he was not present when the victim was murdered. Justice Kaus wrote: "The issue is not as defendant argues, whether he was entitled to have the jury instructed on inconsistent defenses. Of course he was. (E.g., *People* v. *Rodriguez* (1969) 274 Cal.App.2d 487, 497-498 . . . ; *People* v. *Stewart* (1968) 267 Cal.App.2d 366, 374 . . . .) It is, more simply, whether a defense 'deserving of any consideration whatever,' inconsistent with defendant's alibi was presented. [¶] We do not question a jury's right to accept part of the testimony of a witness, while rejecting the rest. (E.g., *Hansen* v. *Bear Film Company Inc.* (1946) 28 Cal.2d 154, 184 . . . ; *People* v. *Langley* (1974) 41 Cal.App.3d 339, 348 . . . .) Yet, while the rule that liars often speak the truth is, as Wigmore points out (3A Wigmore, Evidence, § 1010 (Chadbourn rev. 1970)) rooted in experience and common sense, these

faculties—rather than any legalistic formula—also tell us how far the rule can be stretched in any particular case. [¶] Here the entire thrust of the defense testimony was that at the time of the murder defendant was at his mother's home. Obviously it did not trigger a reasonable doubt that he was, in fact, participating in a well executed, hit-and-run street assassination. It defies common sense that a jury, which has so decisively rejected the alibi sworn to by four witnesses, would nevertheless rely on one incidental aspect of that alibi—defendant's intoxication—for the purpose of entertaining a reasonable doubt as to his capacity to harbor malice seven blocks away. To have given the requested instructions would have been an insult to the jurors, as well as an embarrassment to the law, the court and even, we suspect, to the defense." (*People* v. *Medina, supra,* 78 Cal.App.3d at pp. 1005-1006, fn. omitted.) In the footnote to the foregoing cited language, Justice Kaus emphasized that there was an absence of any judicial error and the opinion did not turn of questions of prejudice. He wrote: "How does one shift gears from a solid. total defense presented by a handful of witnesses, to a partial one which demands that these same witnesses be branded as perjurers? This aside should not be misconstrued to mean that there was harmless error. There was no error." (*Id.* at p. 1006, fn. 2.) Then-Presiding Justice Joseph R. Grodin's opinion in *People* v. *Chambers* (1982) 136 Cal.App.3d 444, 456 [186 Cal.Rptr. 306], is in accord.

*Medina,* which, as will be noted, is materially factually distinct from *Barton,* is the controlling authority in this case. *Medina* is consistent with other authority, which circumscribes the duty to instruct on lesser offenses when there is a complete denial of any complicity in the charged crime by the accused. This line of authority is typified by retired Supreme Court Associate Justice Kaus's analysis in *People* v. *Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893], where he wrote: "Leach contends that the trial court erred in failing to instruct sua sponte on the lesser included offense of grand theft. The trial court must instruct on the general principles of law relevant to the issues raised by the evidence even without a request. We delineated the applicable standard in *People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 . . . : 'The trial court is not obligated to instruct sua sponte on necessarily included offenses unless the evidence would justify a conviction of such offense.' [¶] Leach denied taking part in the robbery. If his story was believed, he was not guilty of anything. In his version, the theft—if any—was committed by Deseguirant, who took Messer's money for the drug purchase and left. Under no view of the evidence was Leach guilty of mere theft. The court was therefore under no duty to instruct on grand theft." Other decisions uphold convictions in the face of a claim that lesser offense instructions should been given when the accused denied any participation in the charged offense. (*People* v. *Trimble* (1993) 16 Cal.App.4th 1255, 1260 [20 Cal.Rptr.2d 495]; *People* v. *Harris* (1979) 93

Cal.App.3d 103, 118-119 [155 Cal.Rptr. 472]; *People v. Salas* (1978) 77 Cal.App.3d 600, 607-608 [143 Cal.Rptr. 755]; *People v. Whalen* (1973) 33 Cal.App.3d 710, 718 [109 Cal.Rptr. 282]; *People v. Birch* (1969) 3 Cal.App.3d 167, 176 [83 Cal.Rptr. 98].) This authority is controlling in the present case.

We do not mean to suggest that every time the accused completely denies under oath any participation in the charged homicide, there is no duty to instruct on lesser and necessarily included offenses. We acknowledge bright lines are difficult to draw in this case. However, the accused may confess or make admissions which indicate the fatal shooting occurred, for example, in the heat of passion. If the confession in which the accused admits shooting the deceased is presented to the jury, then it may be pertinent to the case in terms of conflicting evidence as to what occurred. There are no doubt other scenarios in which a defendant's under-oath denial she or he committed a homicide may be colored by other testimony, which creates substantial evidence sufficient to support manslaughter instructions. However, based on *Medina*, the present matter in which defendant denied being armed and shooting the decedent is not such a case.

Additionally, the present case is materially different from *Barton*, the authority relied upon by defendant. In *Barton*, the defendant testified he shot the decedent. Associate Justice Joyce Kennard described the defendant's testimony as follows: "Defendant, testifying on his own behalf, claimed that the shooting was an accident. He gave this version of events: When he and Andrea first encountered Sanchez at the shopping center, Andrea complained to Sanchez about his spitting on her car window. In response, Sanchez 'went berserk,' and told Andrea, 'Well, do something about it, bitch.' Andrea and Sanchez then began to argue, soon joined by defendant. As defendant, Andrea, and Sanchez left the store, Sanchez assumed a 'fighting stance,' and challenged defendant to a fight. Defendant told Andrea to call the police. Saying, 'I'm going to go get my witnesses at the store,' Sanchez went into a store and came out with a 'gal.' The two of them looked at defendant, laughed, and went back into the store. Moments later, Sanchez came out of the store alone, walked rapidly to his car, and got in. When defendant stepped in front of the car door and asked what he was doing, Sanchez replied: 'None of your fucking business.' Sanchez then swung at defendant, who fell back against the open car door. Defendant saw what looked like a blade in Sanchez's hand. Defendant drew his gun to detain Sanchez until the police arrived, put a round in the chamber and yelled at Sanchez to put the knife on the ground and to get out of the car. When Sanchez made a sudden movement toward defendant, defendant closed his eyes, stepped back, and the gun accidentally discharged. Defendant denied

any intent to shoot." (*People* v. *Barton*, *supra*, 12 Cal.4th at pp. 192-193, fn. omitted.) Quite obviously, given the defendant's own testimony in *Barton*, there was a basis for heat of passion and imperfect-self defense instructions. Hence, the voluntary manslaughter instructions were based on "evidence . . . substantial enough to merit consideration by the jury." (*Id.* at p. 195, fn. 4, citing *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 & fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Additionally, *Barton* is entirely consistent with other Supreme Court decisional authority which allows for voluntary manslaughter instructions on request when the defendant admits shooting the victim but denies any intent to kill. (E.g., *People* v. *Sedeno*, *supra*, 10 Cal.3d at pp. 714, 719-720 [defendant claimed to have taken the gun with which he shot the officer as a " 'reflex action' "]; *People* v. *Dewberry* (1959) 51 Cal.2d 548, 553 [334 P.2d 852] [defendant "tried to fire the pistol to the right of [the decedent], but with no intention to hit him"].) However, no Supreme Court decision has held that when the defendant completely denies shooting the victim as in the present case voluntary manslaughter instructions are in order.

In *Barton*, the Supreme Court described substantial evidence as follows: "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive. (*People* v. *Flannel*, *supra*, 25 Cal.3d at p. 684.)" (*People* v. *Barton*, *supra*, 12 Cal.4th at p. 201, fn. 8.) Further, the *Barton* court noted: "A trial court need not, however, instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime (for example, when the only issue at trial is the defendant's identity as the perpetrator). Because in such a case 'there is no evidence that the offense was less than that charged' ([*People* v. *Sedeno* (1974) 10 Cal.3d 703,] 715), the jury need not be instructed on any lesser included offense." (*People* v. *Barton*, *supra*, 12 Cal.4th at p. 196, fn. 5.) In *Medina*, then-Presiding Justice Kaus, citing *People* v. *Sedeno*, *supra*, 10 Cal.3d at page 716, as well as other Supreme Court authority, held that voluntary manslaughter instructions based on diminished capacity would have been improper where the defendant claimed to be somewhere else at the time of the shooting. This is because the diminished capacity evidence was not " 'deserving of any consideration whatever.' " (*People* v. *Medina*, *supra*, 78 Cal.App.3d at p. 1005, italics omitted.) In *Medina*, when the accused testified to an alibi, the diminished capacity evidence was no longer deserving of consideration. The same is true in terms of the *Barton* holding as applied to the present case. When defendant denied he shot the decedent, none of the alleged evidence of heat of passion and imperfect self-defense was of the type "that a reasonable jury could find persuasive." (*People* v. *Barton*, *supra*, 12 Cal.4th at p. 201, fn. 8.) Simply stated, the duty to instruct on inconsistent defenses does not extend

to cases such as this where the sworn testimony of the accused completely obviates any basis for finding a lesser included offense. No error occurred.

It is appropriate to conclude by returning to the intellectual and jurisprudencial underpinnings of trial judges' duties to instruct on inconsistent lesser included offenses identified in *Barton*. (*People* v. *Barton*, *supra*, 12 Cal.4th at p. 201.) We are satisfied the present case did not change the trial court into a " 'gambling hall[].' " (*Id.* at p. 196.) Given defendant's sworn testimony, presented in the jurors' presence, that he was unarmed and did not shoot anybody, the present case involved a trial court intent on ensuring the judicial process was a forum " 'for the discovery of truth.' " (*Ibid.*)

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

The order directing that the firearm use sentence run concurrently is reversed. The four-year firearm use term is ordered to run consecutively to the second degree murder sentence. An amended abstract of judgment is to be prepared by the superior court clerk and forwarded to the Department of Corrections. In all other respects, the judgment affirmed.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied July 8, 1998, and appellant's petition for review by the Supreme Court was denied September 16, 1998.

*See footnote, *ante*, page 1012.