Filed 5/22/13 P. v. Raygoza CA2/8 (reposted 7/5/13 to correct posting malfunction on 5/22/13)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CLEMENTE RAYGOZA,<br><br>　　　　　Defendant and Appellant. | B238501<br><br>(Los Angeles County<br>　Super. Ct. No. BA372270) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Alex Ricciardulli, Judge. Affirmed in part, as modified, and reversed in part.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant Clemente Raygoza was charged by second amended information with attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a); count 1)[1], assault with a deadly weapon (§ 245, subd. (a)(1); count 2), assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 3), and dissuading a witness from testifying (§ 136.1, subd. (a)(1); count 4).  It was alleged that defendant used a dangerous and deadly weapon (§ 12022, subd. (b)(1); count 2) and caused great bodily injury (§ 12022.7, subd. (a); counts 1, 2 & 3).  The jury found defendant guilty, and all special allegations were found to be true.  He was sentenced to an aggregate term of 11 years, consisting of seven years on count 1, and four years for the enhancements on count 1.  His sentences on the remaining counts and enhancements were stayed under section 654.

On appeal, defendant contends the trial court erred by failing to instruct on the lesser included offense of voluntary manslaughter under the theories of heat of passion and imperfect defense of others.  Defendant also contends, and respondent concedes, that he may not be convicted of both counts of assault, because the counts arose from the same conduct and were merely alternative theories of the same offense.  He therefore maintains that only one assault conviction may stand.  Lastly, defendant contends there was insufficient evidence he *actually* dissuaded a witness from testifying, as alleged in the information, as the witness testified at the preliminary hearing and trial.  Alternatively, he contends the evidence shows only that he attempted to influence her testimony, rather than discourage her from testifying.  While we conclude defendant was entitled to an instruction on voluntary manslaughter under an imperfect defense of others theory, we find that the error in failing to give the instruction was harmless.  We also find that only one of defendant's assault convictions may stand.  We are not, however, persuaded by defendant's remaining contentions.

## FACTS

Violeta Islas and victim Juan Bautista lived together in an apartment on West 17th Street in Los Angeles.  There was a history of domestic violence in the relationship.  In

---

[1]     All undesignated statutory references are to the Penal Code.

September 2009, Islas and Bautista were at a 7-Eleven store when Bautista became angry and jealous and shoved Islas, believing Islas was cheating because her neck was red. According to witnesses, he also headbutted and punched her. She was carrying a child in her arms at the time. Islas called the police to report the incident. But at trial, when asked whether Bautista headbutted her, Islas responded, "No. Not really."

Sometime during the afternoon of May 13, 2010, Bautista ran into Ulysses Martinez on the street in front of Bautista's apartment building. Martinez wanted beer, and Bautista offered to give him a ride to the local convenience store. They purchased an 18-pack of beer and returned to their meeting place.

In the meantime, Islas went to dinner with her daughter and her daughter's father. Islas's niece called during dinner and told Islas that Bautista had come home and was upset. Islas left the restaurant and returned home. When she arrived, she noticed Bautista socializing with some men by his car. He followed her to their apartment and berated her for going out. However, because he was late for a construction job, Bautista angrily said they would discuss things later. He grabbed his tools and left the apartment.

As he walked to his car, Bautista saw defendant searching through the car's contents. Martinez and others were standing near the trunk of the car and appeared angry. As Bautista approached, Martinez struck him and said, "Get the f--- out of here." Bautista got in his car and drove away. The men chucked beer cans at his car.

At around 8:30 p.m., after Bautista left, Martinez, Jimmy Navas, and Jesus Lopez knocked on Islas's apartment door. As they were knocking, Bautista called home, telling Islas he forgot his wallet and was coming back to get it. Once she got off the phone with Bautista, Islas answered the door. She knew two of the men from the neighborhood and considered them acquaintances. They warned her to be careful because Bautista was angry and might hurt her. They said they did not like men like Bautista, and told Islas to warn him to stay out of the area because they had already hit him, and if he came back, "something else would happen."

Bautista returned home while the men were still speaking with Islas. Bautista charged at Martinez. Bautista and Islas's roommate, Jose Aguilar, heard Bautista say,

3

"So I wasn't coming back, huh?" Bautista and Martinez fought. Navas and Lopez joined in, hitting Bautista. Martinez tried to get Bautista to the ground, but Bautista remained on his feet. Bautista had recently had back surgery. Islas was worried that his back would be injured so she wrapped her arms around him from behind to protect his back.

At this point, defendant rode up on a bicycle. According to Islas, he steered his bicycle directly into her, causing her to fall from Bautista's back. Islas saw defendant "ma[king] motions towards [Bautista's] back," but the sleeve of defendant's sweatshirt concealed his hand from her view. Bautista immediately yelled that he had been stabbed. Aguilar also saw defendant strike defendant in the stomach. After attacking Bautista, defendant quickly mounted his bicycle and rode away. Islas yelled for someone to call 911. The other men continued to hit Bautista, but fled before authorities arrived.

Bautista was bleeding, and his intestines protruded from his abdomen. He was taken to the hospital by ambulance, where he was treated for four stab wounds to his back, and one to his abdomen.

A week or so after the stabbing, Islas encountered Martinez and defendant in a Ralphs parking lot. Defendant and Martinez started talking to her about the night of the stabbing. Frightened, she walked into a beauty salon to get away from them. But the men followed her and sat on either side of her. Defendant asked Islas if she and Bautista were going to court. He admitted to kicking Bautista, but denied stabbing him. He told her that Navas was not present when Bautista was stabbed (which was untrue), and that she should say that. Also, either Martinez or defendant said that one of their friends was also stabbed during the fight. The conversation lasted about 12 minutes.

A number of witnesses testified for the defense, but it is unnecessary in the resolution of this appeal to describe all the testimony offered by the defense. We summarize below defendant's testimony in his own defense.

Defendant testified he was playing football with friends on May 13, including Martinez, Navas, Lopez, Oscar Locon, and Alex Obledo. Bautista arrived in his car, and appeared to be drunk and high on methamphetamine. When he got out of the car, he asked if any of the men had seen Islas. Defendant told Bautista he had seen her leave

4

with a man in a truck.  This made Bautista angry, and he threatened to kill Islas.  Lopez and Martinez told Bautista to calm down, but he was very agitated and became angry with Martinez.  Earlier that day, defendant saw Bautista with a knife clipped on his back pocket.

Bautista offered to buy the men beer in exchange for methamphetamine and marijuana.  Martinez and Bautista left to get beer.  When they returned, the group drank together.  Islas returned home, and Bautista followed Islas into the apartment.  About five or 10 minutes later, Bautista left the apartment carrying construction equipment.  Bautista became angry when he saw Locon rummaging through his car.  Bautista and Locon began to argue, and Locon started throwing items out of Bautista's car.  He told Bautista, "Get the f--- out of here."  Defendant also told Bautista to leave.  Bautista yelled at Locon, got in his car, and drove away.  As he drove off, the group threw beer cans at his car.  Bautista put his car in reverse, and backed towards the group, forcing them to jump out of the way to avoid being hit.  Martinez punched Bautista through the open driver's window.  Bautista then drove off.

Lopez suggested they warn Islas that Bautista was angry.  Initially, defendant remained behind.  However, a couple minutes later, he walked over to the apartment and joined his friends in telling Islas about the threats.  Defendant then turned around and walked back across the street.  He mounted his bicycle and rode away, but he then heard the gate to the apartment complex rattle, and became "kind of worried" that Bautista had returned and would hurt his friends.  Defendant rode his bike back to the apartment.

Defendant saw Bautista, Martinez, and Lopez fighting.  Because his bike did not have brakes, defendant accidentally crashed into Islas's leg.  He was worried for his friends because Bautista had a knife in his back pocket and was already angry at them.  Defendant joined the fight for "two seconds" and then turned his back on all the others to leave.  Defendant "figured [he] could just turn around and leave, because there was [*sic*] already three people on [Bautista]."  He heard Bautista say "I got stabbed."  He did not stab Bautista.

5

Approximately two weeks after the stabbing, defendant saw Islas at a Ralphs grocery store parking lot. She walked into a nail salon. Defendant was with Martinez, and told him to wait in the car. Defendant wanted to talk to Islas about the incident because Navas had recently been arrested for participating in the fight even though he was not there.

In the salon, defendant sat next to Islas and asked if she and Bautista were going to court. She said yes. Defendant told her that Navas did not participate in the fight. Islas accused defendant of stabbing Bautista. Defendant denied stabbing him, and Islas admitted that she did not see a knife in his hand. Martinez entered the salon, and Islas looked scared. Defendant did not try to dissuade Islas from attending court. He never threatened her and never told her what to say.

## DISCUSSION

Defendant contends the trial court erred by denying his request for an instruction on the lesser included offense of voluntary manslaughter. Defendant also claims, and respondent concedes, that he may not be convicted of both counts two and three because they arose from the same conduct and were merely alternative theories of the same offense, punishable under the same statute. Lastly, defendant contends there was insufficient evidence to support the conviction in count 4 of dissuading a witness from testifying.

### 1.    Attempted Voluntary Manslaughter

Defendant contends the trial court erred when it denied his request for an instruction on the lesser included offense of attempted voluntary manslaughter, because the evidence supported a finding the stabbing resulted from heat of passion or defendant's unreasonable belief that he needed to defend his friends. Defense counsel argued that defendant's testimony provided a basis for the instructions, but the court refused to give the instructions because defendant testified he never used the knife. Defense counsel argued that it did not matter that defendant denied stabbing Bautista. The court reasoned that "[o]ne conclusion the jury could draw is that he came in and he punched and kicked the victim while he was trying to defend his right. I think there's a

6

substantial basis for that. [¶] . . . [¶] Another possibility that the jury could draw is that he came in with a knife and tried to kill the victim." The court was concerned that to convict defendant of voluntary manslaughter on the basis that he believed he needed to defend his friends, the jury "[would] have to reject part of the defendant's testimony [that he did not use the knife.] [¶] . . . [¶] -- and then accept -- [¶] . . . [¶] -- the other part [that he believed he needed to defend his friends]. [¶] . . . [¶] Under these circumstances, I don't think that that forms a substantial basis so I'm going to deny both attempted voluntary manslaughter and attempt in both -- [¶] . . . [¶] -- of those theories."

Voluntary manslaughter, based on the theories of heat of passion or unreasonable self-defense, is a lesser included offense of murder. (*People v. Breverman* (1998) 19 Cal.4th 142, 153-154.) It therefore follows, and respondent does not dispute, that attempted voluntary manslaughter is a lesser included offense of attempted murder, under heat of passion and imperfect defense of others theories. (*Ibid*.) A trial court is required to instruct on a lesser included offense when the lesser offense is supported by evidence substantial enough to merit consideration by the jury. The trial court need not instruct, however, if there is no evidence that the offense committed was less than that charged. (*Id*. at pp. 154-155; see also *People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5.) The trial court should not refuse to instruct on a lesser included offense because of conflicts in the evidence, which must be resolved by the jury. (*People v. Glenn* (1991) 229 Cal.App.3d 1461, 1465-1467.)

We find no error in the trial court's refusal to instruct on a heat of passion theory of attempted voluntary manslaughter. Heat of passion has both objective and subjective components. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.) The defendant must subjectively act in the heat of passion. (*Ibid.*) And the claimed provocation must be sufficient to cause a reasonable person under the same circumstances to act rashly, without deliberation and reflection, from passion rather than from judgment. (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) The provocation must be such that a "reasonable person in defendant's position would have reacted with homicidal rage." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1086.)

7

Here, there was no evidence that defendant's participation in the fight was prompted by any kind of homicidal rage. By his own testimony, he only participated for two seconds until he was confident that his friends had the advantage in the fight. Defendant claimed that he acted to protect his friends, rather than "rashly." His participation in the fight was the result of reasoned judgment rather than impulse. (*Carasi*, *supra*, 44 Cal.4th at p. 1306.) Moreover, nothing happened that was sufficiently provocative to cause an average person to react with deadly passion. Accordingly, an instruction on this theory was not required.

Respondent contends the voluntary manslaughter instruction was not required on the alternative theory of imperfect defense of others because there was no substantial evidence that defendant unreasonably believed he had to stab Bautista to defend his friends, defendant denied stabbing Bautista, and his defense was that someone else had done it. (Lopez and Martinez testified that Locon admitted to stabbing Bautista.) Imperfect defense of others applies when a person kills under an actual but unreasonable belief in the necessity to defend another person from imminent peril to life. (*People v. Randle* (2005) 35 Cal.4th 987, 996-997, overruled on other grounds in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) "[O]ne who kills in imperfect defense of others—in the actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury—is guilty only of manslaughter." (*Randle*, at p. 997.)

Defendant's denial that he stabbed Bautista conflicted with Islas's and Aguilar's testimony that defendant stabbed Bautista. Though he denied the stabbing, defendant admitted that he briefly participated in the fight out of concern for his friends' safety. Thus, a reasonable jury could believe defendant's testimony about why he joined the fight, but reject his claim that he did not stab Bautista, if the jury believed the testimony of Islas and Aguilar was true. It was for the jury, not the court, to resolve the conflict in the evidence.

The "duty to instruct on lesser included offenses . . . arises . . . regardless of the trial theories or tactics the defendant has actually pursued." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162; see also *People v. Barton*, *supra*, 12 Cal.4th at pp. 194-195; but see

8

*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1019, 1020 [There is no "duty to instruct on lesser offenses when there is a complete denial of any complicity in the charged crime by the accused"; but a "defendant's . . . denial she or he committed a homicide may be colored by other testimony, which creates substantial evidence sufficient to support manslaughter instructions"].)

Nevertheless, we find the failure to give the instruction was harmless, and there is no reasonable probability that the error affected the outcome. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165.) Defendant's testimony that he was "worried" for his friends and thought Bautista would hurt them was extremely weak, particularly since, according to defendant, he only joined the fight for "two seconds" then quickly turned his back on his friends and left the scene, having satisfied himself that his friends had gained the advantage in the fight. Defendant fled immediately after the stabbing, not staying behind to check on his friends to see if they were okay, or to ensure their continued safety. The evidence also showed that he used his bicycle to shove Islas out of the way, dispelling any claimed concern for her safety.

Moreover, the trial court instructed the jury on the defense of others, a theory which the jurors rejected when they convicted defendant of attempted murder. The jury also found defendant guilty of assault, even though they were instructed that in order to convict, they must find "defendant did not act in defense of someone else." Under these circumstances, there is no reasonable probability that the jury would have reached a different result had they received the instruction.

## 2. Assault

Defendant argues, and respondent concedes, that one of his two assault convictions (either his conviction for assault with a deadly weapon in count 2, or his conviction for assault by means of force likely to produce great bodily injury in count 3) must be vacated. While it is well settled that the same conduct may be punished under multiple statutes, a single crime cannot be fragmented into more than one offense. (§ 954; *People v. Rouser* (1997) 59 Cal.App.4th 1065, 1073; *People v. Schroeder* (1968) 264 Cal.App.2d 217, 228.) In *In re Mosley* (1970) 1 Cal.3d 913, our Supreme Court held

that "[t]he offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*Id*. at p. 919, fn. 5.) Defendant's conviction is based on the same act of stabbing Bautista; therefore, the conduct constituted a single crime of assault, punishable under the same statute under different theories. We therefore agree that only one conviction may stand. Accordingly, the conviction on count 3 should be stricken and vacated, and the judgment modified to reflect one conviction for assault with a deadly weapon under section 245, subdivision (a)(1), with the corresponding enhancements attaching to that count.

### 3. Dissuading a Witness

Defendant contends that insufficient evidence supports his conviction under section 136.1, subdivision (a)(1), which makes it a crime to "[k]nowingly and maliciously prevent[] or dissuade[] any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." The witness he was accused of dissuading was Islas. She was not dissuaded from testifying; she testified both at the preliminary hearing and at trial. Defendant contends respondent's theory at trial was that he *attempted* to dissuade Islas from testifying, a violation of section 136.1, subd. (a)(2). But the information alleged a violation of subdivision (a)(1) (actual dissuading) and did *not* allege a violation of subdivision (a)(2) (attempted dissuading).

The jury was instructed that a conviction on count 4 required evidence that "defendant maliciously *tried to* discourage Ms. Violeta Islas from attending or giving testimony in court" and that "[i]t is not a defense that the defendant was not successful in discouraging the witness." (Italics added.) During closing argument, the prosecutor emphasized that "dissuading" meant that defendant tried "to influence and discourage someone from coming to court to testify." Although defendant has styled his appeal as a

10

challenge to the sufficiency of the evidence, we will treat the challenge as a claim he was denied due process by having been convicted of an uncharged offense.**2**

Due process requires that a criminal defendant receive adequate notice of the nature of the accusation against him and an opportunity to be heard. (*Cole v. Arkansas* (1948) 333 U.S. 196, 201.) Consistent with due process, an accusatory pleading is intended "'to provide the accused with reasonable notice of the charges.'" (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 132.) Therefore, "except for lesser included offenses, an accused cannot be convicted of an offense of which he has not been charged, regardless of whether there was evidence at his trial to show he committed the offense. [Citation.] An exception exists if the accused expressly or impliedly consents or acquiesces in having the trier of fact consider a substituted, uncharged offense. [Citations.]" (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1438.)

Respondent concedes that defendant was "incorrectly charged under section 136.1, subdivision (a)(1)." However, respondent contends the information was impliedly amended with defendant's consent to substitute section 136.1, subdivision (a)(2) for subdivision (a)(1). In *People v. Toro* (1989) 47 Cal.3d 966 (*Toro*), the defendant was charged with attempted murder and assault with a deadly weapon. (*Id.* at p. 970, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn 3.) After a conference on jury instructions the trial judge listed by CALJIC number each of the instructions he proposed to give "'absent any objection.'" (*Toro*, at p. 977.) Among the instructions was one on battery with serious bodily injury, a lesser related (but not a lesser included) offense of the crimes charged in the information. The defendant did not object to the proposed instructions on battery, and did not object to the jury's consideration of this offense.

---

**2**      We note that the abstract of judgment reflects a conviction under section 136.1, subdivision (a)(1), even though the jury was instructed on the elements of a violation of subdivision (a)(2).

11

Our Supreme Court found the failure to object constituted an implied consent to the jury's consideration of the battery charge. (*Toro*, *supra*, 47 Cal.3d at p. 977.) "In accordance with these principles, it has been uniformly held that where an information is amended at trial to charge an additional offense, and the defendant neither objects nor moves for a continuance, an objection based on lack of notice may not be raised on appeal. [Citations.] There is no difference in principle between adding a new offense at trial by amending the information and adding the same charge by verdict forms and jury instructions. . . . The risk of unfair surprise to the defendant is the same in either case, as is the potential benefit to the defendant of affording the jury a wider range of verdict options. To prevent speculation on a favorable verdict, a reasonable and fair rule in both situations is that a failure to promptly object will be regarded as a consent to the new charge and a waiver of any objection based on lack of notice." (*Toro*, at p. 976, fn. omitted.)

Here, defendant never objected to the instruction that he could be convicted upon a finding that he *tried to* dissuade Islas, and never claimed lack of notice when the jury followed the court's instructions, and found defendant guilty  Throughout the preliminary hearing and trial, the parties and the court proceeded as if defendant had been charged with attempting to dissuade Islas from testifying, rather than having actually dissuaded her. While *Toro* addressed a conviction for a lesser related offense, we believe its rationale is equally applicable here, where the information merely reflected an incorrect subdivision number, and the crimes had nearly identical elements and were both misdemeanors. (See § 136.1, subd. (a).) Defendant's acquiescence prevents him from contending on appeal that he received inadequate notice, or that the evidence was insufficient to support his conviction.

To the extent that defendant alternatively argues there is insufficient evidence of an attempt to dissuade Islas from testifying, we disagree.

Defendant approached Islas and asked her if she was going to court. She was frightened by his approach. When she walked away, defendant followed her into a beauty salon and sat down beside her. He told her he did not stab Bautista and that his

12

friend Navas (who at the time was under arrest for the attack on Bautista) was not there, even though defendant and Islas both knew Navas was there and participated in the attack. Defendant acknowledged that she appeared frightened during this conversation, yet he persisted. The obvious implication of the evidence is that defendant was trying to dissuade Islas from testifying.

## DISPOSITION

The judgment of conviction on count 3 is stricken and vacated. The judgment of conviction for count 4 is modified to reflect defendant's conviction under section 136.1, subdivision (a)(2). The trial court is directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GRIMES, J.

WE CONCUR:


RUBIN, Acting P. J.


FLIER, J.

13