Filed 10/29/21  P. v. Kobak CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID ALAN KOBAK,<br><br>        Defendant and Appellant. | A159864<br><br>(Humboldt County<br>Super. Ct. No. CR1703639) |

Defendant David Kobak shot a victim multiple times at close range after the two had been drinking in Kobak's apartment, killing the victim. A jury convicted Kobak of second degree murder.  On appeal, Kobak contends the trial court erred by refusing to instruct the jury that a person who commits a homicide while unconscious due to voluntary intoxication is guilty of involuntary manslaughter.  He also argues the trial court erroneously denied his requested instruction that jurors could consider the effects of intoxication when evaluating his statements to police.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    August 2017 Shooting

Kobak, a man in his late seventies, has problems with his memory and keeps track of information by writing it down in a notebook.  He and the victim, both fishermen, initially worked together and later became friends. In August 2017, Kobak invited the victim to stay in his apartment in Eureka.

1

On August 25, 2017, Kobak and the victim drank most of the day at a bar. Over the course of that day, Kobak drank approximately 10 to 12 beers, as well as a few shots of liquor. In the afternoon, Kobak left the bar to make dinner at his house. The victim later returned to Kobak's apartment and sat on a stool near the stove where Kobak was cooking. While the two initially talked in a cordial manner, the victim slowly started losing his temper. He was apparently angry about something Kobak did, and suddenly the victim punched Kobak in the face twice. The victim said something that "pissed [Kobak] off," but Kobak did not remember anything he said in response. Kobak then walked to his bedroom, picked up his loaded 9-millimeter rifle and shot the victim primarily in his torso eight times, killing him.

Kobak called 911, telling the dispatcher that he just shot and killed his "buddy" with a rifle. In response to the dispatcher's questions on the recorded call, Kobak provided his full name, telephone number, and address. He described his clothing and followed instructions to place the rifle in his bedroom and go outside to wait for the police. Officers detained Kobak, placing him in handcuffs. He was cooperative with officers, but he swayed slightly as he walked and smelled like alcohol. Although Kobak stated that he was drunk, he was able to answer questions, walk on his own, and seat himself in the back of the police car without assistance.

In a recorded interview by police shortly after, Kobak admitted to killing the victim. He stated, "It was easy in fucking the moment, yeah . . . Goddamn, I hate myself, man." Kobak noted that he probably would not have killed his friend if he had been sober. Police administered a breathalyzer test which showed Kobak's blood-alcohol concentration was 0.16 percent. A blood draw two hours later showed Kobak's blood-alcohol concentration was 0.147 percent.

Based on these facts, an information was filed charging Kobak with first degree murder (Pen. Code,[1] § 187, subd. (a)) and alleging that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).

## II. Jury Trial

### A. Defense Testimony

At trial, Kobak testified that he could not recall the content of his argument with the victim, only that the victim was mad. He did not remember shooting the victim, he only remembered there were "pop[s]" from a gun, he looked down to find the victim on the floor, and then he called 911. While he remembered being placed in handcuffs and walking to the police car, he did not recall speaking with police. He noted that if he did make any specific statements to the police, he forgot them.

Kobak's expert witness, an analytical chemist and phlebotomist, opined that Kobak's blood-alcohol concentration was probably between 0.178 and 0.205 percent—possibly as high as 0.276 percent—at the time of the shooting. She testified that blood-alcohol concentrations above 0.11 percent impair judgment, memory, and motor skills. At blood-alcohol concentrations between 0.16 and 0.19 percent, a person may experience blackouts and drastic mood swings, while concentrations above 0.20 percent increase the possibility of blackouts and inability to remember events.

### B. Jury Instructions

The trial court rejected Kobak's request to instruct the jury with CALCRIM No. 626, which states in relevant part: "If someone dies as a result of the actions of a person who was unconscious due to voluntary intoxication, then the killing is involuntary manslaughter." As a result, the

---

[1] Undesignated statutory references are to the Penal Code.

3

trial court refused to instruct the jury on the lesser included offense of involuntary manslaughter. The trial court did, however, instruct the jury that it could consider whether Kobak's intoxication impacted the ability to observe, recollect and communicate, when evaluating the credibility of his trial testimony.

The jury found Kobak not guilty of murder in the first degree, but guilty of murder in the second degree as a lesser included offense. The jury also found true the enhancement allegation.

## DISCUSSION

## I.    Unconsciousness Resulting from Voluntary Intoxication

Kobak contends the trial court erroneously refused to instruct the jury on the lesser included offense of involuntary manslaughter based on unconsciousness resulting from voluntary intoxication. (CALCRIM No. 626.) According to Kobak, there was substantial evidence that he was unconscious due to intoxication—i.e., his testimony that his blood-alcohol concentration was high enough for blackouts coupled with his trial testimony claiming no recollection of the shooting—thereby, warranting the instruction. After examining the evidence, we disagree.

### A. Legal Principles and Standard of Review

Trial courts must instruct the jury on any defense theory that is supported by substantial evidence. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 806.) Similarly, the trial court's sua sponte duty to instruct on a lesser included offense "exists when there is substantial evidence to support the defendant's culpability of the necessarily included crime." (*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1016.) In this context, substantial evidence is evidence from which "a jury could reasonably conclude that the defendant committed the lesser offense but not the greater

4

one." (*People v. Hardy* (2018) 5 Cal.5th 56, 98.) We review the failure to instruct the jury on the general principles of law relevant to issues raised by the evidence and the failure to instruct the jury on a lesser included offense de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215, 1217; *People v. Berryman* (1993) 6 Cal.4th 1048, 1089.)

Unconsciousness is generally a complete defense to criminal homicide. (*People v. Ochoa* (1998) 19 Cal.4th 353, 423.) But "[w]hen a person renders himself or herself unconscious through voluntary intoxication and kills in that state, the killing is attributed to his or her negligence in self-intoxicating to that point, and is treated as involuntary manslaughter," a lesser included offense of murder. (*Ibid.*; *People v. Halvorsen* (2007) 42 Cal.4th 379, 414 (*Halvorsen*).) Unconsciousness need "not rise to the level of coma or inability to walk or perform manual movements; it can exist 'where the subject physically acts but is not, at the time, conscious of acting.'" (*Id.* at p. 417.) "An unconscious act . . . 'is one committed by a person who because of somnambulism, a blow on the head, or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional.'" (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1083.)

**B. Insufficient Evidence of Unconsciousness**

There was insufficient evidence that Kobak was unconscious due to voluntary intoxication or to support a reasonable conclusion he was guilty of only involuntary manslaughter. (See *People v. Sisuphan, supra,* 181 Cal.App.4th at p. 806.) There is no dispute that Kobak was drunk during the shooting. He had been drinking throughout the day and possibly had a blood-alcohol concentration as high as 0.276 percent during the shooting. As Kobak points out, his expert testified that people could have blackouts if their blood-alcohol concentration is above 0.16 percent. At 0.2

percent and above, a person may not be able to feel pain, may experience blackouts, and may not recall his actions.

According to Kobak, the term "blackout" as used in CALCRIM No. 3425, the instruction for unconsciousness, supports his claim that the expert testimony about a possible blackout is sufficient to establish unconsciousness. But the term "blackout" in that instruction does not appear to mean a blackout due to intoxication. (CALCRIM No. 3425 [bench notes following CALCRIM No. 3425 for "Unconscious State: Blackouts" cites *People v. Cox* (1944) 67 Cal.App.2d 166, 172—in which the defendant was hit on the head with a bottle and may have suffered a brain injury resulting in " 'automatism,' and that while in such unconscious condition he committed an act without being conscious thereof"].) In any event, testimony from Kobak's own expert precludes a finding that the term blackout, as used during this trial, means unconsciousness. Rather than describing blackouts as a loss of consciousness of one's action when they are occurring, Kobak's expert explained that a blackout due to intoxication generally means an inability to recall actions. Evidence that a defendant is intoxicated and unable to remember details of a crime has been held insufficient to warrant an unconsciousness instruction. (*Halvorsen*, *supra*, 42 Cal.4th at p. 418 [expert testimony that defendant's blood-alcohol concentration may be 0.20 at the time of the shooting and evidence that defendant "habitually drank to excess with resultant memory losses" was not substantial evidence warranting an involuntary manslaughter instruction based on unconsciousness due to intoxication].)

Even if the possibility of a blackout due to his blood-alcohol concentration is consistent with unconsciousness, Kobak's behavior during the shooting was not. (*Halvorsen*, *supra*, 42 Cal.4th at p. 418 ["complicated

6

and purposive nature of [defendant's] conduct" did not support inference of unconsciousness while committing crimes].) In his police interview shortly after the shooting, Kobak stated he had been drinking and arguing with the victim. He recalled getting his gun—specifically identifying it as a 9-millimeter rifle—from his bedroom, and walking out of his bedroom, at which point he stated the victim "got up and started giving me some shit so I just pulled the rifle out and shot him." Immediately after the shooting, Kobak put his gun back in his room, turned off the stove, and called 911, during which he explained he had shot and killed the victim with his rifle, all demonstrating his awareness of the shooting. He provided the dispatcher with responsive, detailed information about his name, telephone number, and address and identified the clothing he was wearing. (Compare with *People v. James* (2015) 238 Cal.App.4th 794, 810 [error refusing to give CALCRIM No. 3425 instruction on unconsciousness defense where there was evidence defendant mumbled incoherently, ran around crashing his head into cars and garbage cans, and was unresponsive to police commands].)

During his interview with police, Kobak noted that it was "easy" to shoot the victim in the moment. He stated the shooting was the "[d]umbest thing I ever did," indicating his intoxication simply clouded his judgment, not that he lacked an awareness of his actions before and during the shooting. (Cf. *People v. Ochoa, supra*, 19 Cal.4th at p. 424 [statement that defendant did not know what was going through his mind during the crime indicated his cocaine intoxication caused him to make "foolish choices," not that he lacked criminal intent].) Taken together, Kobak's actions and statements precluded any inference of his unconsciousness at the time of the shooting. (See *Halvorsen, supra*, 42 Cal.4th at p. 418.)

7

Nonetheless, Kobak argues that his trial testimony regarding gaps in his recollection of the shooting—that he had no memory of going to his bedroom, getting his rifle, or firing it—was substantial evidence that he was unconscious. That Kobak could not "by the time of trial, accurately recall certain details of the shooting[] does not support an inference he was unconscious when he committed" it. (*Halvorsen*, *supra*, 42 Cal.4th at p. 418.) Unlike the defendants in *People v. Wilson* (1967) 66 Cal.2d 749, and *People v. Bridgehouse* (1956) 47 Cal.2d 406, Kobak provided the police with detailed information about the shooting which was inconsistent with his trial testimony claiming no memory of the shooting. (*Wilson*, *supra*, 66 Cal.2d at p. 762 [testimony that defendant could recall details of events immediately preceding the shooting but not of shooting the victims was consistent with statements to police]; *Bridgehouse*, at p. 410 [defendant's testimony that he had a vague memory of events just before the shooting, but no recollection of the actual shooting was similar to statement made to police when arrested].) Thus, Kobak's trial testimony that he could no longer remember certain events does not constitute substantial evidence he was unconscious when he committed the shooting. (*Halvorsen*, at p. 418 [distinguishing *Wilson* and *Bridgehouse* because "the defendants testified to a mental state consistent with unconsciousness *and with prior statements to police*," italics added].)

Because there was insufficient evidence of unconsciousness, the trial court properly declined to instruct the jury with CALCRIM No. 626.[2] For that reason, the trial court's failure to instruct the jury on the lesser included offense of involuntary manslaughter, premised entirely on his alleged

---

[2] We do not address the Attorney General's argument that a CALCRIM No. 626 instruction here is impermissible as a matter of law in any homicide case.

unconsciousness due to involuntary intoxication, was also proper. (*People v. Sinclair*, *supra*, 64 Cal.App.4th at p. 1016.)

## II. Instruction for Effect of Intoxication on Statements to Police

Kobak next argues the trial court prejudicially erred by rejecting his proposed CALCRIM No. 625 modification, i.e., allowing the jury to examine "defendant's intoxication when considering his statements and behavior when questioned by law enforcement." We disagree.

### A. Additional Background

At trial, a detective testified that Kobak was "unable or unwilling" during his post-arrest interview to provide details of the victim's negative statements just before the shooting. Kobak requested a modification to CALCRIM No. 625 to address any inferences that his evasiveness was the result of his awareness of his guilt rather than the result of his intoxication.

The trial court rejected Kobak's requested language, but modified CALCRIM No. 625 to state: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation. [¶] A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] You may not consider evidence of voluntary intoxication for any other purpose, *except as outlined in instruction 226*." (See CALCRIM No. 625,[3] italics added.) It also modified CALCRIM No. 226—the instruction

---

[3] The last sentence of the standard CALCRIM No. 625 instruction normally states: "You may not consider evidence of voluntary intoxication for any other purpose."

addressing witness credibility—to read in part: "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are . . . [d]id intoxication impact the ability to observe, recollect and communicate?"

When the trial court modified these instructions, Kobak's counsel reminded the trial court that he briefed the issue and included a proposed instruction stating the jury "can consider [involuntary intoxication] in terms of the questioning and his statements of behavior in front of law enforcement." The trial court responded, "That's what I – I just put that in." Kobak's counsel agreed, stating, "No. I know . . . I appreciate the Court doing it. Thank you."

## B. Forfeiture and No Prejudice

On appeal, Kobak argues that the court's modifications were incomplete because they limited the jury's consideration of voluntary intoxication evidence to its evaluation of the veracity of his trial testimony, and not his statements to police. He thus claims the trial court prejudicially prohibited him from presenting defense evidence.

At the outset, Kobak forfeited this claim. To the extent that he now claims the instructions were incomplete, it was incumbent on Kobak to request amplifying language after the court modified the instructions. (*People v. Andrews* (1989) 49 Cal.3d 200, 218 ["a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language"].) Instead, he agreed to the trial court's modifications without requesting any additional changes, thus forfeiting the claimed error. (See *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118–1119.)

10

Further, even assuming error, there was no prejudice. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [state standard for harmless error is a reasonable probability of a more favorable outcome in the absence of error]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1134–1135 [evaluating errors that have the effect of excluding voluntary intoxication defense evidence under state standard for harmless error].) Kobak complains that without his requested instruction, the trial court prohibited the jury from considering his intoxication to evaluate whether he made false or misleading statements to the police. As a result, Kobak claims, the prosecutor argued he was evasive during his police interview and that his trial testimony maintaining little memory of the shooting was false.

But the jury was not instructed with CALCRIM No. 362, which allows a jury to consider a defendant's knowingly false or misleading statement about a charged crime as showing an awareness of his guilt. (CALCRIM No. 362.) More importantly, Kobak's recorded post-arrest interview—during which Kobak repeatedly stated that he was drunk but described the shooting—was admitted into evidence and played for the jury. Rather than relying solely on the prosecutor's characterizations, the jury could independently evaluate Kobak's demeanor and the veracity of Kobak's recorded statements to police. (*People v. Dennis* (1998) 17 Cal.4th 468, 522 [while "[p]rosecutors have wide latitude to discuss and draw inferences from the evidence at trial," the jury must decide whether that inference is reasonable].) Indeed, the facts from that interview were clear: Kobak picked up a rifle from his bedroom, pointed the rifle at the victim, and shot him. Given these facts and the unavailability of an unconsciousness defense, any error was harmless.

In any event, the modified instructions, as given, allowed the jury to consider the effect of intoxication on Kobak's ability to recollect information. Other instructions given, such as CALCRIM No. 105, similarly cautioned the jury to not automatically reject testimony because people "sometimes honestly forget things or make mistakes about what they remember." Consistent with these instructions, Kobak's counsel argued that Kobak could not remember details of the shooting because he was intoxicated. His counsel argued, "He can't remember the shooting at all. He does not recall a lot. [The prosecutor is] saying that the memory is selective. But the way in which alcohol works, combined with his already limited memory issues, it's not surprising that he remembers earlier in the day . . . [but] [c]an't remember any timeline." On this record, there is no reasonable probability of a more favorable outcome if the jury was instructed to consider the effects of intoxication on Kobak's statements to police.

Because this error was harmless, it could not have affected his substantial rights, contrary to Kobak's claims. (See *People v. Franco* (2009) 180 Cal.App.4th 713, 720.)

## III. Cumulative Error

Kobak contends the cumulative effect of errors deprived him of due process and a fair trial. (*People v. Williams* (2009) 170 Cal.App.4th 587, 646 [assessing the cumulative effect of each alleged error to determine whether jury would have rendered more favorable result in the absence of errors].) Here, the one assumed error was not prejudicial. It does not warrant reversal.

## DISPOSITION

The judgment is affirmed.

_____
Chou, J.*

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A159864

---

\* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.